## *IN RE STICKNEY'S WILL.

*Devise and Legacy—Perpetuities—Vesting of Bequest—Conditions Precedent and Subsequent—Residuary Clause—Charitable and Religious Uses—Bequest to Foreign Religious Corporation of More Than it is Authorized by Charter to Hold—Right of Heirs at Law to Attack the Bequest.*

A testator devised the residue of his estate to a religious corporation, and required " as a condition of the vesting of this legacy " that the legatee should release certain claims against three churches in Baltimore.   It was contended that the condition relating to the vesting of the legacy was precedent, and that since it must not necessarily be performed within a life or lives in being and twenty-one years thereafter, it was void under the rule against perpetuities.   *Held,* that the releases by the residuary legatee to the churches could be executed at the time, before or after the vesting of the legacy; that it was not the intention of the testator that the releases should be executed before the vesting of the legacy; that the acceptance of the bequest would *ipso facto* work an equitable release; that the form of the bequest showed that it was the intention of the testator that the residuary legatee should take at once, the execution of the releases being a condition subsequent, and that consequently the residuary clause did not violate the rule against perpetuities.

The question whether certain words create a condition precedent or a condition subsequent is generally one of intention, especially when the condition is annexed to a devise or bequest.

If the thing required to be done by a legatee may be done as well after as before the vesting of the estate, the condition is generally subsequent, and the doing of it is not a condition of the vesting of the estate such as to create a perpetuity.

Courts are averse to construing conditions to be precedent when by so doing the vesting of an estate under a will would be defeated.

The amount of the bequest in this case to a religious corporation of New York was alleged to be greater than the corporation was authorized under its charter and the laws of that State to take and hold.

---

*   * The docket title of this case was:   *The Congregational Church Bldg. Society* v. *Charlotte C. Everett et al.— Charlotte C. Everett et al.* v. *The First Congregational Church et al.— Thomas W. Hall et al.* v. *The First Congregational Church et al.*

*Held,* that the heirs at law and next of kin of the testator could not take advantage of this objection in this State for the purpose of having the bequest declared to be void as to the excess.

The legal incapacity of a corporation to take property by devise or bequest in excess of the amount prescribed by its charter cannot be taken advantage of by the heirs at law and next of kin of the testator.

*Semble,* that it is doubtful whether the Courts of New York would enforce the statutory limitation of the amount of property the corporation in question was capable of taking, as against a bequest in the will of a testator in this State.

Certain bequests for charitable uses in one clause of a will were alleged to be void by the heirs at law and next of kin of the testator. The residuary clause of the will provided that if any of the charitable bequests should fail to take effect or be void, then they should go to the residuary legatee. The residuary legatee disclaimed any right to the charitable bequests in question and insisted upon the validity of the entire will. *Held,* that since the residuary clause was valid the heirs and next of kin had no interest in the question whether the charitable bequests were valid or not.

Three appeals from a decree of the Circuit Court of Baltimore City (DENNIS, J.), construing the will of Joseph Henry Stickney. The fourth and fifth sections of the seventy-fifth clause of the will, and the seventy-sixth clause are as follows :

" 4. And believing it would be for the great advantage of the said town of Plymouth to widen Middle street from Main street to Cole's Hill, thereby rendering Cole's Hill more accessible, I give and bequeath to the said ' Trustees of the Stickney Fund' the sum of twelve thousand dollars, to be appropriated and applied by them, to aid in so widening Middle street—upon the condition, however, that the said town of Plymouth shall make the said improvement, and shall enter upon the work of making the same within one year of my decease ; otherwise, the said twelve thousand dollars shall pass into and be a part of the residue of my estate.

" 5. And if the ' Pilgrim Society,' in said town of Plymouth, shall think it advisable to remove the canopy now over ' The Rock' to ' Cole's Hill,' to be placed, say, opposite to Middle street, and place under it a granite shaft or obelisk

to the memory of those who died during the first winter, and were buried on Cole's Hill, and after such removal to place around the said rock a light but substantial iron structure, which will afford perfect security to 'The Rock,' while not dwarfing it in size or appearance, the lot where the canopy now stands to remain as at present, and the said rock to be raised slightly, if it will admit of it, then I give and bequeath to the said 'Trustees of the Stickney Fund' the sum of ten thousand dollars, to be appropriated and applied to the carrying out of the said plan of removal; otherwise, the said sum of ten thousand dollars to pass into and be a part of the residue of my estate.

" *Seventy-sixth.*—I give, devise and bequeath all the rest of my estate and property of every kind and description whatsoever, real, personal and mixed, and wheresoever situated or being, which I may own or have any right or title to, at the time of my decease, and that whether the same has been acquired by me heretofore, or shall be acquired by me hereafter, unto the body corporate, formerly existing as a corporation under the name of ' The American Congregational Union,' but which has laid aside that name, and is now properly designated as the ' Congregational Church Building Society,' which has its offices in the 'Bible House,' in New York City, and in the ' Congregational House,' in Boston, and of which H. O. Pinneo, Bible House, New York, is (or lately was) treasurer; and I expressly hereby require as a condition of the vesting of this legacy, that the said residuary legatee, the said ' Congregational Church Building Society,' shall release all claim which it has against the ' First Congregational Church of Baltimore,' for any fund or funds, or money, owing by said church to it, and any and all claim and demand that it has to, for or against any and all property in the city of Baltimore, now occupied by said church, and shall execute to such church a good and valid legal assignment, transfer and release thereof; and shall in like manner release the ' Second Congregational Church of Baltimore ' and the ' Canton Congre-

gational Church of Baltimore County,' from any and all claims and demands which it has or shall have against either of said churches, or any property of any kind used by or in possession of said 'Second Congregational Church of Baltimore,' or said 'Canton Congregational Church of Baltimore County.'

" It is my wish and desire, and I do therefore hereby declare it to be my meaning and intention, that if from any cause whatever any of the charitable bequests, legacies or devises for charitable uses, or public, or local improvements, or benevolent purposes, made by this my will, fail to take effect, or be inoperative or void, then that portion of my estate so devised or bequeathed for the charitable or benevolent use, or object, or public or local improvement, so failing to take effect, and becoming inoperative and void, shall go to and become the property of, and I do hereby give, devise and bequeath the same to the said 'Congregational Church Building Society,' the residuary legatee hereinbefore named, unless otherwise provided.

" While making this bequest I desire to express my regret that so many of the societies to be benefited under the provisions of this my will, which are substantially connected with, dependent upon and supported by the Congregational Churches, bear names which are not distinctive of their position and purposes, and my profound conviction that their own interests, and the interests of Congregationalism require that there should be such amendment or modification of their name as to show clearly their connection and purposes, and to express the hope that at an early day these societies will make such amendment to their names as will clearly express their connection and aims ; and I especially desire to express my great gratification that the residuary legatee in this will, formerly known as the 'American Congregational Union,' has taken the name of the 'Congregational Building Society' which is the true designation of the work in which it is engaged, etc."

The value of the estate passing under the residuary clause was estimated to be about $335,000.

That part of the opinion of the Court below (DENNIS, J.), relating to this clause, was as follows:

" It will thus be seen that this is not an absolute gift to the legatee, the payment of which is fixed upon future contingencies, in which case a reasonable time should be allowed for the happening of those contingencies; but the testator expressly declares that the estate shall not *vest*—*i. e.*—no title shall pass until certain conditions precedent have been complied with, and no time is fixed within which they must be so complied with."

" The rule against perpetuities is stated in *Barnum* v. *Barnum*, 26 Md. 271: 'If an estate be so limited as by possibility to extend beyond a life or lives in being at the time of its commencement and twenty-one years and a fraction of a year afterwards, during which time the property would be withdrawn from the market, or the power over the fee suspended, it is a perpetuity and void, as against the policy of the law. In all such cases to give effect to the limitation over the contingency *must* happen within the time prescribed by the law. If it *may* happen *after* that time, then the preceding estate tends to a perpetuity, which the law abhors and forbids.' And in *Lewis on Perpetuities*, p. 478, it is laid down: 'The rule obviously condemns as invalid every gift of a *future* interest in property, made to depend on an event, which, although it may possibly happen within the allowed period, may possibly not happen until the expiration of such period. Let the event contemplated be what it may, and the probability of its early occurrence as great as it may, it will in every case be of too remote expectancy, and a limitation on it will therefore always be void, unless either from the nature or internal quality of the contingency, or from express provision and restriction, it be certain that the event which is to give effect to the limitation will happen, if at all, within the period of lives in being and twenty-one years."

" This bequest under the 76th clause, it will thus be seen, falls directly within the rule. The testator expressly de-

clared it should not vest in the legatee until the conditions were complied with ; it vested, therefore, at his death, immediately in his heirs at law and next of kin, and if the legatee could take it at all, it would be by virtue of an attempted limitation over upon an event for which no time is fixed, and the time for which is dependent upon the will of a corporate body to be exercised, not within a life or lives in being, but at any time, or indeed may not be exercised at all ; and this the law will not permit."

" That the testator used the word ' vest ' in the sense given to it above, is, I think, clear from the will itself. It was a carefully drawn instrument, the work of a lawyer, who must be supposed to know the meaning of legal terms ; and that he did know them is shown by the different language used in those clauses of the will where the gift is made to take effect at once, but the time for the *payment of the legacy is suspended* until a condition has been complied with. Thus, in the 54th clause, he bequeaths $50,000 to American Missionary Society, ' provided, however, that this legacy is made upon the condition that *before the same shall be paid*, and within a reasonable time after my decease, the said association shall change its name.' And in the 52d clause, he made the condition that ' before the same should be payable ' the name should be changed. Again, in the 57th clause, the bequest was declared ' not to be payable' until the legatee's name should be changed so as to have in it the word ' Congregational.' It is apparent, therefore, that the testator used the expressions discriminatively ; and it must be presumed that he intended by these contrasted terms to indicate different ideas. See *In re Thurston's Will*, 17 Simons, 25.

" But even if there was not this positive evidence on the face of the will itself that the testator used the word *vest* in its technical sense, the legal presumption is that he did so use it, unless the will shows a contrary intention. It is a word of art, and the well-established rule of construction is that such words are always to be construed in a technical

sense, unless there is clear evidence in the will itself that another signification was intended. *Thelusson* v. *Woodford*, 4 Vesey, p. 329; *In re Thurston's Will*, 17 Simon, 25; 2 *Williams on Executors*, 557.

"And even if this construction were doubtful, yet it must be adopted; for the law will not allow the heir to be disinherited upon conjecture; and if there be two equally probable interpretations of a will, that one is to be adopted which prefers the kin of a testator to strangers. *Quinn* v. *Hardenbrook*. 54 N. Y. 86. And in *Ridgely* v. *Bond*, 18 Md. 448, our Court of Appeals says: 'The title of the heir at law being clear and obvious, no words in a will ought to be so construed as to defeat it if they can have *any other signification.*'

"If it be said that the effect of such a construction, by defeating the bequest to the legatee, is to defeat the testator's intention, yet that results from the operation of a rule of law which no atempt of the testator will be allowed to override. The rule against the perpetuities is a rule of policy, and is applied wholly irrespective of the testator's wishes or intent, upon considerations of the highest public interest, and it must necessarily defeat the testator's intent in every case in which it is applied. To give effect to such a contention, therefore, means nothing less than the complete abrogation of the rule, as no case can be conceived of where its application would not equally have the result of defeating the testator's intentions.

"The case of *Smith* v. *Meth. Church Extension Society*, 56 Md. 394, is relied on by the counsel for the defendants to show that although the estate may have vested in the heirs at law and next of kin upon the death of the testator, it was subject to be divested and to vest in the legatee, if the conditions imposed were performed within a reasonable time. But that case was altogether exceptional, depending upon the express provisions of our Constitution, and was in no way intended to qualify or limit the general rule in regard to perpetuities or the destiny of estates. It

was there held that, although the property at the death of the testator became vested in the heirs at law and next of kin, yet, it became divested out of them and vested in the legatee, by *virtue of a Legislative Act*, in pursuance of Constutional authority.  The Court says: ' This results from the provisions of the organic law, which has clothed the the Legislature with the power to sanction the legacies; when sanctioned, the *Legislative 'Act relates back to the death of the testatrix, and the legacies take effect from that time*.  In such case, no rights vested in heir or next of kin which were not subject to be divested by the Act of the Legislature, sanctioning the legacies,' pages 394–395.

" It is not doubted that the Legislature has the power to change the rule about the vesting of estates, so as to destroy the rule against perpetuities; but until they have done so, as they did in the above case, the general doctrine must be applied.

" It is also contended on behalf of the defendants, that the legatee was bound to perform the conditions and elect to take the legacy before the personal estate has been closed; and as by law it ought to be closed within a year, this period—*i. e.*, one year—is a time limitation which complies with the requirements of the rule.

" The answer to this is two-fold; first, it is not true that the estate *must* be closed within one year from the testator's death.  The law merely requires that the executor shall return his account at the end of one year; and then, if the estate is not ready for closing, he returns another at the end of six months, and so on until the estate is finally closed, so that the actual time for closing the estate is wholly indefinite.

" Secondly—The well-established rule of construction is that where, in the same will, there is a devise and bequest, all must be governed by the rules applicable to the devise. 2 *Redfield on Wills*, 3rd ed. 244; *Jones* v. *Wynford*, Small and Giff, 59).  Now, the obligation of an executor to close the estate has nothing to do with the real estate, with which

he has no concern, and which passes directly by the will. What limitation is there, then, as to the realty within which the legatee must make his election, and thus divest the estate which had become vested in the heirs at law? Manifestly none; and, as both realty and personalty are embraced in this residuary clause, and as the latter follows the same disposition and is governed by the same rules as the former; if the legacy is void as to the realty by reason of having no proper period fixed for its vesting in the legatee, it is void likewise as to the personalty."

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE and BOYD, JJ.

*John Prentiss Poe*, for the Congregational Church Building Society, appellant.

The rule against perpetuities, relied on by JUDGE DENNIS, as the ground of his decree, has, I submit, no application whatever to such a case as this. It never applies to a *present* gift or devise, the enjoyment of which is to depend upon the performance of a condition by the donee or devisee, but it applies only to *future executory limitations*, which depend upon a contingency, the happening of which may not occur within the time prescribed by the will, viz., a life or lives in being *at the time of its commencement* and twenty-one years and a fraction afterwards. No case has been produced, and I have found none, where a residuary legacy bequeathed in terms of *present* gift to an existing, legal and qualified corporation as the first, direct and immediate taker from the testator has ever been held void as a violation of the rule against perpetuities, simply because the enjoyment, payment, receipt or vesting of such legacy is made *conditional* upon the performance by the legatee corporation itself of some specific act. *The performance by the legatee of a condition*, the performance of which is absolutely within its control, and for the performance of which, where no definite time is named, the law will give the legatee a reasonable

time, is obviously a totally different thing from the *happening of a contingent event* at some remote, future and unascertainable time *after the commencement of an estate*, such, for example, as the indefinite failure of issue of a named or unnamed legatee or devisee. In the one case, there is a *present* gift to an existing, designated and immediate first taker, without any terms of future and executory limitation over, and subject only to a *condition* to be performed by such first taker; while in the other the *contingent event* upon which the estate depends, may never happen at all; or if at all, not until after the period prescribed by the rule.

Although prior to *Barnum's case*, 26 Md. 171, the accepted legal view in regard to what is meant by a perpetuity *restricted* the cases in which the question could arise *exclusively* to *future contingent estates* [as abundantly appears by the authorities cited by JUDGE WEISEL in delivering the opinion of the Court]; still in that case, the Court went further and applied it to a *present vested trust* estate, which was so limited as to plainly and *necessarily* continue and extend beyond the prescribed period. The extract from JUDGE WEISEL's opinion declares that the "question *generally* arises in cases in which *a future contingent estate or executory devise* is limited upon a fee, and if the contingency upon which the executory estate is to vest is not necessarily to happen within the time fixed by the rule as the legal boundary, then the precedent estate or estates are denominated a perpetuity, and the executory estate or devise fails for want of a legal estate to support it." It is to such cases as these that the Court says that the rule applies, *and avoids the preceding estate.*

Now, while the application of the rule against perpetuities to the *vested* trust estate created by Mr. Barnum's will, so as to render void the trust and the power to lease conferred upon the trustees, as well *quoad* the period of time not prohibited by the rule as *quoad* the period prohibited, has been vigorously criticised as a new departure upon this branch of the law, still, the doctrine as there so stated, and

followed in subsequent cases—*Deford* v. *Deford*, 36 Md.
168 ; *Albert* v. *Albert*, 68 Md. 352 ; *Dulany* v. *Middleton*,
72 Md. 76-7 ; *Thomas* v. *Gregg*, 76 Md. 169—does not at
all fit the question presented here.

*We have here no case of a vested estate attempted to be
unduly prolonged beyond the legal boundary, nor any future
contingent or executory estate failing because the* PRECEDENT
*estate is a forbidden perpetuity.*    Indeed, we have no future
contingent or executory estate, and no void precedent estate
whatever.    But we have the simple case of a *residuary*
" legacy " given in words of *present* gift to a designated re-
siduary legatee actually and presently existent and legally
competent to take and hold, with an accompanying decla-
ration merely that as a condition of the " *vesting* " of such
" *legacy*," the legatee shall make certain specified releases.
It is plain, therefore, that neither the question decided in
*Barnum's case*, nor the statement of the rule against per-
petuities in the Court's opinion, touches our present case
at all.

Our contention is that upon the whole will it is apparent
that all the testator meant by the use of the words " *and I
expressly require as a condition of the vesting of this legacy*,"
that it shall release all its claims against the First and Sec-
ond Congregational Churches of Baltimore City and the
Canton Congregational Church of Baltimore County, &c.,
&c., was that the receipt, payment, enjoyment " *or vesting
in possession* " of the whole devise and legacy should, at
most, *be accompanied* by the making of the specified re-
leases—precisely as would have been necessary had the
testator stipulated that as a condition for such vesting in
possession—that is to say, such receipt, delivery or enjoy-
ment—it should execute a release *to the executors* for the
amount turned over by them to it—that the gift was an
absolute gift, the possession, payment and enjoyment of
which was fixed upon the performance by it of an act which
might as well be performed simultaneously or coincidently
with such vesting in possession, as prior thereto—that the

delivery of such releases by the legatee could not be demanded, nor was it intended to be required, until the executors were in due course prepared to turn over possession of the legacy to it; and that for their preparation and delivery the legatee was, at all events, entitled to a reasonable time, which has not yet expired—that "*from the nature and internal quality*" of the act to be done by the legatee as well as by force of the true meaning of the will, such act must of necessity have been completely performed long before the expiration of the time fixed by the rule against perpetuities; and that with respect to such an act, it is not only not reasonable, but not even possible to suppose or to imagine for one moment that the testator supposed that its performance could, by the wildest stretch of imagination, be postponed for the inconceivable period of lives in being and twenty-one years afterwards; and this, amongst other things, for the plain reason that the terms of the gift subjected it to an equitable lien, charge or trust, to the extent of whatever claim, if any, the legatee might have at the testator's death against the three churches mentioned in the clause—and that, consequently, to bring such a case as that presented by this will, within the rule against perpetuities, is to make a will for the testator which he did not make for himself, and to do this by "*a forced and unnatural construction*," which is as irrational as it is contrary to the accepted rules of interpretation applicable to questions of this character.

But there are other views equally decisive. The words "and I expressly require as a condition of the vesting of this legacy," do not create a condition precedent. The testator does not say that *before* the title to this devise and legacy shall vest in the said residuary legatee, it shall release its claim, &c., but simply that "as *a condition of the vesting of this legacy*," it shall release. This is not only consistent with the idea of a *present* gift, but it distinctly *makes a present gift*, impressing upon it, however, a trust in favor of the three designated churches, to the extent of whatever claim

the residuary legatee might have against these churches. The gift and the trust are inseparable. The acceptance by the legatee of the testator's bounty, operates in and by itself as a release of all its claims against the specified churches.

The release is not required to precede the vesting of the legacy, but, on the contrary, is to accompany or follow it, and hence, as this is plainly to be collected from the will, the condition is subsequent. The right to the rest and residue attached to the residuary legatee, at once, by force of the residuary clause, subject to the trust in favor of the three churches, and these churches, upon the acceptance of the testamentary gift by the residuary legatee, were thereby released from any claims which it might have against them, and were entitled to demand coincidently with the receipt of the legacy, or within a reasonable time thereafter, the required written releases, which releases as a condition of such prior vesting in it, the residuary legatee was directed to execute and deliver.

The title of the residuary legatee vested at once and was wholly untouched by the rule against perpetuities. This view carries out the plain intention of the testator, and is at the same time in entire harmony with the established rule of interpretation governing such cases. This rule is clearly stated by JUDGE STONE, delivering the opinion of the Court in *Crisp* v. *Crisp*, 61 Md. 152, as follows: " The Court of Appeals has long since announced in the broadest terms the general rule that the law favored the vesting of estates, and that to make an estate contingent it must appear from the language used and the nature and circumstances of the case that the time of payment was made the substance of the gift; that estates will be held to be vested whenever it can be fairly done without doing violence to the language of the will, and to make them contingent there must be plain expressions to that effect, or such intent must be plainly inferrible, from the terms used, as to leave no room for construction. (*Tayloe* v. *Mosher*, 29 Md. 443, adopted in *Fairfax* v. *Brown*, 60 Md. 50)." *Dulany* v. *Middleton*, 72 Md.

75, where the Court (ALVEY, C. J.), declares that " this prin-
ciple is especially enforced in regard to residuary bequests,
since intestacy is generally the consequence of holding them
to be contingent."

The estate of the residuary legatee was, therefore, a pres-
ent vested one, clogged with a lien, charge, trust, duty or.
condition (call it what you please), which accompanied and
followed the estate in its hands ; which did not interfere
with the immediate accrual of its right to its legacy, but, at
most, operated to put an end to its estate, if within a rea-
sonable time after the testator's death, it failed to discharge
the lien, perform the duty, execute the trust or comply with
the condition indicated by the testator, viz., to release the
three specified churches from any claim which it might have
against them at the time of his death, and as the evidence of
such release (necessarily involved in its receipt of the leg-
acy), to execute and deliver to the three churches the writ-
ten releases which the testator directed it should give to
them respectively.

The argument thus far has been directed to establish that
the residuary clause, properly interpreted, does not create a
condition precedent ; that the word " vesting " should not
be interpreted as the Court below has construed it, but that
even if it be thus interpreted, the residuary legatee was and
is entitled to a reasonable time within which to make the
prescribed releases.   Our contention upon this part of
the case is, that where, by a deed or will, an estate is granted,
or devised subject to the operation of a condition precedent
required to be performed by the grantee or devisee, and no
time is designated in the deed or will within which the
grantee or devisee is to perform the condition, a reasonable
time must of necessity be understood to be given for its per-
formance ; and that this is the established rule of law.   The
argument and authorities thus far submitted, it is believed,
sufficiently maintain this proposition.   Indeed, any other
doctrine would necessarily lead to the result that no grant
or devise dependent upon the performance of a condition

precedent imposed upon the grantee or devisee, can ever be valid, where the deed or will omits to prescribe the time within which the condition must be performed. This, I respectfully insist, cannot possibly be the law. It results from this, that where such devise is to an individual, the rule against perpetuities cannot apply, not only because in such case the condition, if ever performed at all, must be performed within the life of the individual legatee, but also because in such case the individual legatee can be compelled to perform it within a reasonable time, or lose his rights by failure to comply with the condition upon which their accrual depends. No sound reason can be given for a distinction between an individual devisee and a corporation devisee. If one is entitled to a reasonable time to get rid of the obstacle to his title, possession or enjoyment, created by the condition precedent, the other should also have identically the same right. Hence, while it is clear that from the " nature and internal quality " of the condition involved here, its performance cannot by possibility be delayed beyond a reasonable time, and it is thus demonstrated not to be within the rule against perpetuities, it is equally clear that the devisee was entitled to a reasonable time within which to perform the condition.

*George Wilcox*, for the same appellant.

*Arthur Lord* and *Henry Stockbridge, Jr.*, for the trustees of the Stickney Fund, in support of the legacies in the seventy-fifth clause of the will. The ruling of the Court upon the residuary clause made it unnecessary to pass upon the validity of these legacies.

*John C. Everett*, for Charlotte Stickney Everett, Mary E. Haas and Julia L. Reed, appellees.

*William A. Fisher*, for Thomas W. Hall, Clayton C. Hall *et al.*

It is claimed on behalf of these defendants that the en-

tire seventy-fifth and seventy-sixth clauses are void and in-operative under the doctrine of perpetuities, and that if the Court should not sustain this view of their effect, the seventy-sixth clause is inoperative by reason of the want of capacity in the Congregational Church Building Society to take the devise and bequest.

The Court never enquires whether the testator had the *intention* to violate the rule against perpetuities, or indeed whether he had it in view at all. If the language used tends to the creation of a perpetuity, then the bequest will be declared to be void, although the testator may have been earnest in his desire to comply with the rule. The only true doctrine, that which has been accepted by all Courts of authority, is that the words used shall be construed as if there were no rule against perpetuities, and the intention having been thus ascertained, the Court will apply the rule in the determination of the validity or invalidity of the grant or devise. A few references will now be given to sustain this statement. *Speakman* v. *Speakman*, 8 Hare, 185; *Heasman* v. *Pearce*, L. R. 7 Ch. App. 283; *Cunliffe* v. *Brancker*, 3 Ch. Div. 399.

In a word, it is, as stated by LORD JESSEL, M. R. (in *Miles* v. *Harford*, L. R. 12 Ch. Div. 702), *a matter not of intention, but of expression.* The attempt in the argument alluded to has been to place the rule of perpetuities under ban, and to have it regarded as something from which a party is to be rescued, in much the same manner in which Courts deal with limitations or the usury law. But such is not the attitude of the judicial mind with respect to this rule. It was introduced by the Courts themselves, to meet the requirement of an enlightened public policy. It is not to be undermined, or weakened or frittered away by means of hostile, or sinister, or indirect constructions.

It is so far from being true that the construction must be such that the rule is never to be applied, unless it is apparent that the testator intended a violation of the rule, that whenever the rule is applied, it defeats the intention, as do

several other of the established rules of property—such as the rule in *Shelly's case*, and that as to the vesting of contingent remainders.   3 Ch. Div. 399, JESSEL, M. R., in *Cunliffe* v. *Brancker*; *Gray on Perpetuities*, section 629.

There is no distinction between uncertainty and remoteness, and whenever the element of uncertainty is introduced into a limitation, there is remoteness under the rule.   The requirements are, 1st, that there must be some *fixed* period beyond which the contingency may not be extended; 2nd, that this period shall not *exceed* a life or lives in being and twenty-one years and a fraction, or twenty-one years absolutely, if no lives be taken.   Therefore, if the will had been express that the releases should be executed within a reasonable period, to be determined by the appropriate tribunal, nevertheless the devise would have been within the rule. The counsel for the residuary devisee, in presenting this proposition now being discussed, have been misled by expressions in some text writers in relation to legacies or devises on condition.   *Schouler on Wills* was referred to by them in the Court below, and *Mr. Schouler* and other writers on the subject of wills [*Mr. Jarman*, page (848), *Mr. Beach*, at sec. 225, for example], state that when no time is fixed for performance, a time, reasonable under the circumstances of the case, may be allowed.   But the authors are speaking of instances not within the rule of perpetuities, and they could not possibly have any other meaning.  They are not discussing the *validity* of devises or bequests, but the time to be allowed with respect to those which are *operative*.

In other words, when the circumstances are such that the condition *must* be performed within a life or lives in being and twenty-one years, or a portion afterwards, the inquiry is, nevertheless, what is a reasonable time *within* that period?   When *performance* of some condition is required it must necessarily be done within the life of the person by whom it is to be performed, and therefore it could not fall within the rule, upon the principles of deci-

sion in the case of *Biscoe* v. *Biscoe*, 6 Gill & J. 232. There
is certainly no indication in the words of the authors that
they intended to express the opinion that a condition re-
quiring performance, upon which the vesting of a devise or
bequest is made to depend, is to be excepted out of the
rule of perpetuities. " If the condition is such that it will
not necessarily be performed within the legal period, the
limitation fails for remoteness." *Marsden on Perpetuities*,
page 43.

There are numerous cases which have been decided upon
the inoperativeness of conditions under analogous condi-
tions, and without any reference to a theory that a reason-
able time should be allowed. *Welsh* v. *Foster*, 12 Mass.
93, was a conveyance, with a proviso that the deed should
not take effect, or be made any use of, until a mill pond
should cease to be employed for the purpose of carrying
any two mill wheels. The Court said " The estate intended
to be conveyed to Welsh was not to take effect, or be
vested, " until the mill pond should cease to be used for
the purpose of carrying any two mill wheels." It is ap-
parent that this event, if it should ever happen, might be
delayed much beyond the utmost period allowed for the
vesting of estates on a future contingency. The rule as to
springing and shifting uses is the same which is uniformly
applied to executory devises, and the reason of the rule
applies equally to all of them, namely, to prevent the crea-
tion of perpetuities or inalienable estates. The event must,
in its original limitation, be such that it must either take
place, or become impossible to take place, within the space
of one or more lives in being, and a little more than twenty-
one years afterwards." *Palmer* v. *Preston*, 17 R. I. 629,
633. There was a bequest to trustees of a fund to raise
premiums for a State Medical Association, and a limitation
over, if the trustee should neglect or refuse to execute the
trust for the term of one year, or if the society should dis-
continue its meetings, or decline in numbers to twenty
members. The limitation was held to be in conflict with

the rule. *Jocelyn* v. *Nott*, 44 Conn. 55, 58–9. There was a devise and bequest of the residue of the estate of a testatrix to trustees, to be accumulated until it should be disposed of according to the direction of the will. She stated her wish to be that some Congregational Church should occupy certain land mentioned, and directed, that whenever any other orthodox Congregational Church should desire to erect a church upon it, and the trustees should be satisfied that the church was permanently established, and that it had the ability, together with the rest and residue of her estate, to build the church, the trustees should permit the church to be constructed, and when it should be completed they should convey the lot and transfer all the residue of her estate to the church corporation. The Court said: " This will contravenes the well-settled rule of the common law, that a limitation by way of executory devise, which may not take effect within the terms of a life or lives in being and twenty-one years afterwards, adding, in the case of a child unborn, about nine months more, is void, as too remote and tending to create a perpetuity. This rule, says the Supreme Court of Massachusetts, in *Fosdick* v. *Fosdick*, 6 Allen, 41, is imperative and perfectly well established. * * * The fact that this may be regarded as a charitable devise does not exempt it from the operation of the rule. The common law and our own statute are without exception. All devises or grants, whether for church use or otherwise, must vest, if at all, within the time limited." The case of *Levy* v. *Levy*, 33 N. Y. 125, is closely analogous to the one now under discussion. Mr. Levy, the owner of the Monticello estate, devised it to the people of the United States, in trust, to establish and maintain a certain school, and if Congress should refuse to accept it and to take the necessary steps then to the people of Virginia, provided they, by acts of the Legislature, would accept and carry out the trusts, and should Virginia, by neglect of its Legislature, decline to accept the trusts, then to certain Hebrew congregations, provided they should obtain the

necessary legislation to enable them to establish a desig-
nated school. The Court of Appeals of New York held
the whole disposition to be in contravention of the law of
perpetuities. The revised statutes of New York had altered
the rule by limiting the period to *two* lives, but the reason-
ing is equally applicable to the common law rule.

(The argument relating to the capacity of the Church
Building Society to take the bequest under its charter .and
to the doctrine of election relied on by the residuary lega-
tee against the next of kin is omitted.)

FOWLER, J., delivered the opinion of the Court.

The bill in this case was filed by some of the heirs at law
and next of kin of the late Joseph Henry Stickney of Bal-
timore City, for the construction of certain parts of his will.
By the first twenty-four clauses the testator gives " mod-
erate pecuniary legacies " to his nephews, nieces and cous-
ins. The remaining fifty-two clauses, with the exception of
the twenty-fifth and twenty-sixth, with which we are not
now concerned, relate to legacies to a large number of relig-
ious, charitable and educational corporations. Many of these
were attacked by the original and amended bills, but by
amendments and by dismissing their appeals as to some of
these clauses, the plaintiffs have left but two clauses, namely,
the seventy-fifth and seventy-sixth for our consideration.

The distinguished counsel representing the parties on both
sides of the three appeals now before us, in addition to ex-
haustive oral arguments, have filed voluminous briefs. Both
in the preparation of these briefs, as well as in the arguments
at bar, they have shown such fullness of learning, thorough
investigation, and such skill and zeal as to excite admira-
tion. We cannot, however, give our assent to the view in
reference to the seventy-sixth or residuary clause, which
has been so ably advocated by the plaintiffs' counsel. The
statement of their position, it appears to us, will demonstrate
the futility of any successful attempt to maintain it in the
face of the language of the testator on which it is founded.

That position is that the residuary clause is void because it violates the rule against perpetuities. They contend, secondly, that the 75th clause is void for the same and other reasons; and, thirdly, that, by the laws of the State of New York, under which the corporation which is the residuary legatee was incorporated, it has no corporate capacity in any view to take more of said residuary estate of the testator than will amount to or yield the annual income of ten thousand dollars.

By the decree of the Court below it was held that the fourth and fifth sub-clauses of the 75th clause, and the whole of the 76th or residuary clause were void, and that the bequests thereby made should go to the plaintiffs and defendants, next of kin of the testator, in certain proportions not necessary now to mention. All the other parts of the will were sustained. From this decree the plaintiffs have appealed so far as it sustains the seventy-fifth clause. Some of the defendants who are next of kin and have the same interest as the plaintiffs have taken a similar appeal. The residuary legatee has appealed generally from the decree.

The question based upon the supposed fatal objection of a violation of the rule of perpetuity by the seventy-sixth clause; second, the incapacity of the residuary legatee to take, and, thirdly, the validity of the seventy-fifth clause will be considered in the order just named.

The language upon which the first contention rests is as follows:

"*Seventy-sixth.*—I give, devise and bequeath all the rest of my estate and property of every kind and description whatsoever, real, personal and mixed, and wheresoever situated or being, which I may own or have any right or title to, at the time of my decease, and that whether the same has been acquired by me heretofore, or shall be acquired by me hereafter, unto the body corporate, formerly existing as a corporation under the name of 'The American Congregational Union,' but which has laid aside that name, and is now properly designated as the 'Congregational Church

Building Society,' which has its offices in the ' Bible House,' in New York City, and in the ' Congregational House,' in Boston, and of which H. O. Pinneo, Bible House, New York, is (or lately was) treasurer, and I expressly hereby require as a condition of the vesting of this legacy, that the said residuary legatee, the said ' Congregational Church Building Society,' shall release all claim which it has against the ' First Congregational Church of Baltimore,' for any fund or funds, or money owing by said church to it, and any and all claim and demand that it has to, for or against any and all property in the city of Baltimore now occupied by said church, and shall execute to such church a good and valid legal assignment, transfer and release thereof; and shall in like manner release the ' Second Congregational Church of Baltimore,' and the ' Canton Congregational Church of Baltimore County,' from any and all claims and demands which it has or shall have against either of said churches, or any property of any kind used by or in possession of said ' Second Congregational Church of Baltimore,' or said ' Canton Congregational Church of Baltimore County.' "

The words in which the condition is set forth " and I expressly hereby require as a condition of the vesting of this legacy, that the said ' Congregational Church Building Society ' shall release," &c., are relied upon as the first and most important step in establishing the existence of a perpetuity, for in them the plaintiffs, and the defendants who agree with them, have found a condition precedent. In short the contention is, notwithstanding the emphatic terms used by the testator in making the gift, that there was not and was not intended to be made, any immediate bequest; that the condition on which it was given is precedent and not subsequent, and that, therefore, the bequest is subject to the well-known rule against perpetuities and is void in its inception, because the condition is such that it must not necessarily and under all circumstances be performed within the compass of a life or lives in being and twenty-one years and a fraction afterwards.

But, notwithstanding the force and skill with which this view was pressed upon us, we fail to find any substantial support for it in the language of the testator.    After making such provision as he deemed proper for his relations, having no immediate family of his own, he proceeded to distribute the residue among a number of corporations of the character we have already mentioned—giving to the residuary legatee nearly one-half of his large estate.    It was undoubtedly his intention that all of these legatees, including, of course, the residuary legatee should take, hold and administer the legacies which he bequeathed to them respectively.    We should not, therefore, assume that he intended to violate a settled rule of law, and thus by the will itself frustrate his own declared intention ; but, if the language which he used, upon its face, shows such an intention, it would, of course, be our duty to apply the rule "remorselessly," *Gray on Perpetuities*, 378, without regard to the consequences.    But it is obvious that before this rule can be applied, the subject to which it is to be applied must exist.    As was said by SIR GEORGE JESSEL, M. R., in *Cunliffe* v. *Brancker*, 3 Ch. Div. 394 : "Courts do not regard the consequences of any rule of construction which they may have established, as presenting any objection to its application, when *clearly called for*."    In other words, before the rule will be applied it must be clear that a perpetuity exists.    It must be conceded that this view, especially in its application to wills, is supported not only by reason but by the settled rules of construction and the great weight of authority.    We do not understand there is any difference between counsel as to the rule, nor the circumstances under which it should be applied, but they differ widely as to the propriety and justice of its application to the will now before us, and the single question, therefore, upon this branch of the case is, admitting the rule here invoked by the plaintiffs, but that it is to be applied only when clearly called for, whether this is such a clear case as to demand its application.    It is said that when the language " is fairly capable

of two constructions, one of which would produce a legal result, and the other, one that would be bad for remoteness," we should adopt the former rather than the latter and thus promote the accomplishment of the testator's intention. *Gray on Perpetuities*, sec. 633.

While in the books there may be found much learning and many nice distinctions in the law relating to conditions precedent and subsequent, yet in the construction of wills we should constantly keep in mind the great object in cases like this, which is to ascertain the testator's intention, and having discovered that to declare and enforce it if consistent with the rules of law. The question as to whether certain words create a condition precedent or subsequent is generally one of intention, and this is especially so when the condition is annexed to a devise or bequest. It is said in *Creswell* v. *Lawson*, 7 G. & J. 240, that there are no " precise technical words necessary to the creation of a condition precedent or subsequent, either in a will or deed ; but the same words may be construed to operate either as the one or the other, according to the evident sense to which they are used, as indicated by the instrument. Upon this principle," continues the Court, "all the cases profess to have been decided." It is equally well settled that if the thing to be done does not necessarily precede the vesting of the estate in the grantee, but may accompany or follow it, and may as well be done after as before the vesting of the estate, the condition is subsequent. 1 *Jones Law of Real Estate*, 619 ; *Finley* v. *King's Lessee*, 3 Peters, 346. It seems to us that it is evident that the Acts here relied on as constituting conditions precedent, namely, the execution of certain releases, are capable of being performed either at the time, before or after the vesting of the bequest in the residuary legatee—whether performed at one time or the other, the result to all the parties interested would be the same, hence there is no reason to suppose that the testator intended the releases should be executed before the vesting of the bequest as a protection to the churches which were to be

thereby benefited.   Indeed it would seem upon the plainest
principles of justice and equity that the acceptance of the
bequest would *ipso facto* work an equitable release.   An
obvious construction to be placed upon the language is that
when the executors should put the residuary legatee in
possession, it was to execute the required releases, and if it
should delay or for any reason refuse beyond a reasonable
time to act, a Court of Equity would, at the instance of the
proper parties, decree releases to be executed so as to give
absolute protection.   The supposed difficulty here, disap-
pears when we apply the rule as laid down by C. J. MAR-
SHALL in *Finley* v. *King's Lessees, supra.*   If the act or con-
dition required does not necessarily precede the vesting of
the estate, but may accompany or follow it, the condition is
subsequent, in which case, of course, no perpetuity arises,
for the obvious reason that the bequest vests at once upon
the death of the testator and cannot, therefore, be said to be
put and kept *extra commercium.*   But it would seem, also,
that the form of the gift, " I give, devise and bequeath,"
shows that a present and not a future estate was intended,
and that in the contemplation of the testator the residuary
legatee was to take at once upon his death, and not at some
remote uncertain time in future beyond the period allowed
by law.   *Eldridge* v. *Eldridge,* 9 Cush. 519 ; 2 *Washburne
on Real Prop.* 449.   The remaining words, "and I expressly
hereby require as a condition of the vesting of this legacy,"
must be construed so as to effectuate the general intention
unless it is clear that intention is contrary to the rule against
perpetuity.   But " Courts are averse to construing condi-
tions to be precedent where they might defeat the vesting
of estates under a will."   *Pennington* v. *Pennington,* 70 Md.
418.   And especially is this so " in regard to residuary be-
quests."   *Dulaney* v. *Middleton,* 72 Md. 75.   And in con-
clusion it is only necessary to say that when the executors
are prepared in the course of the administration of the tes-
tator's estate to transfer the legacy, the residuary legatee
will *then* or within a reasonable time thereafter to be fixed

by the Court in which the estate is being administered, required to execute the releases mentioned in the residuary clause. Thus, we think, the plain intention of the testator would be accomplished, for the residuary legatee would get what it must be conceded it was intended that it and not the plaintiffs should have, and this result would be attained without the violation of the rule against perpetuities.

2. This brings us to the consideration of the second question, whether the residuary legatee has any corporate capacity to take more of the residuary bequest than a sum that will not exceed the annual income of ten thousand dollars.

Whether it has such power depends, say the plaintiffs, upon its charter, which is found in Acts of the New York Legislature. It was incorporated under the provisions of the New York "Act for the incorporation of benevolent, charitable and missionary societies," passed April 14, 1848. The name of the corporation was afterwards changed to the name it now bears, "The Congregational Church Building Society." Section 2 of the Act of 1848 is as follows: "And they, and their successors, by their corporate name, shall in law be *capable of taking, receiving, purchasing and holding* real estate for the purposes of this incorporation to an amount not exceeding the sum of $50,000 in value, and personal estate for like purposes, to an amount not exceeding the sum of $75,000 in value; but the clear annual income of such real and personal estate shall not exceed the sum of $10,000."

Section 6 is as follows: " Any corporation formed under this Act shall be capable of taking any devise or bequest, contained in any last will or testament of any person whatsoever, the clear annual income of which devise or bequest shall not exceed the sum of $10,000; provided no person, leaving a wife or child, or parent, shall devise or bequeath to such institutions or corporations, more than one-fourth of his or her estate, after the payment of his or her debts, and such devise or bequest shall be valid to the extent of

such one-fourth, and no such devise shall be valid in any will which shall not have been made and executed at least two months before the death of the testator."

The contention of the plaintiffs is that none of the various Acts, 1881, ch. 641 ; 1885, ch. 88 ; 1890, ch. 497 ; 1892, ch. 687, sec. 12, which either amended the Act of 1848 or related to the same class of corporations, made any change whatever in the provisions of section six just quoted, except the Act of 1860, ch. 360, which made no change material to the question here being considered, and that, therefore, section six remains unaffected, and hence the residuary legatee can only take as is thereby provided. But in answer to this contention it is said that however much the power of other charitable corporations in the State of New York may have been restricted by section 6, it has and can have no force as against this legatee, since the Act of 1871, ch. 111, which is as follows :

" Chapter 111. An Act relative to the American Congregational Union of the city of New York. Passed March 15, 1871.

"The people of the State of New York, represented in Senate and Assembly, do enact as follows :

"Section 1. It shall be lawful for the American Congregational Union in the city of New York to take and hold, by gift, grant or devise, or otherwise, subject to all the provisions of law relating to devises and bequests by last will and testament, and to purchase, hold and convey any estate, real or personal, the annual income received from such real estate not to exceed the sum of seventy-five thousand dollars, for the purpose of aiding feeble churches in the erection of houses of worship, and to render such aid, by gift or grant, or by loan, either with or without security. Section 2. This Act shall take effect immediately."

It is conceded, as we understand the position of the plaintiffs, but whether conceded or not, it is plain, that this Act increases the power of this legatee " to take and hold by gift, grant or devise, or otherwise " from all sources an un-

limited amount of personal property and real estate, the
annual income from which shall not exceed the sum of
$75,000. Much was said as to the effect of this Act, and
especially as to whether, conceding its enlarging effect upon
the power of this corporation to take in the aggregate, it
altered or repealed the limitations contained in section 6,
and whether, also conceding that section 6 is still in force in
New York as to this corporation, it has any force outside
of that State.

But we will not undertake to pass upon these questions,
interesting as they are, for assuming that the section in
question limiting the power of this corporation to take,
prevails in the State of New York, and that it may be rec-
ognized in other States, the plaintiffs and defendants who
are here relying upon it to show a want of corporate power
clearly have no standing, for that purpose, in the Courts of
this State, since the decision of the case of *Hanson* v. *The
Little Sisters of the Poor, &c.*, 79 Md. 440, for we there held
that the legal capacity of a corporation to take property by
devise or bequest in excess of the amount prescribed by its
charter, cannot be taken advantage of by heirs at law or
next of kin. We there said : " In regard to the question
before us there has been considerable conflict of authority.
The Court of Appeals of New York in the matter of *Mc-
Graw*, 111 N. Y. 66, announced the doctrine relied on by
the appellants (the heirs at law), but the Supreme Court of
the United States in *Jones* v. *Habersham*, 107 U. S. 174,
adhere to the contrary doctrine, namely, that restrictions
imposed by the charter upon the amount of property it may
hold, cannot be taken advantage of collaterally by private
persons, but only by the State in a direct proceeding insti-
tuted for that purpose. And it was so held in a case where,
as here, the heirs of a decedent filed a bill to have declared
void certain devises to charitable corporations, which it was
averred would swell the amount of property owned by the
corporation to an amount greater than the charter author-
ized."

The Act of 1871 before mentioned, as we have seen, gives to the residuary legatee power to take personal property without limit, and real estate not in excess of the estimated value of the whole of the bequest here in controversy. Therefore this case comes directly within *Hanson's case, supra,* for we there said: "It cannot be denied that this corporation had power to take any estate and property not exceeding the charter limits, and the devise, therefore, was not void on its face, and it must be held valid as to all the world, until it has been determined at the instance of the State that the charter has been violated * * * * * * The corporation can take property to any amount but can hold it, as against the State, only to the amount provided by the charter." But it is urged that the doctrine thus laid down should not be applied to this case as against the next of kin. While we are not unmindful of their claims, yet we must not forget, keeping in mind the cardinal rule, that the testator's intention, as expressed in his will, must be respected and enforced unless contrary to some settled principle of law. Hence there can be no hesitation or doubt as to the proper course to pursue when we discover that by following our own doctrine we gratify his clearly expressed will that this legatee should have his residuary estate, and by following the supposed ruling of the Court of Appeals of New York we would give that estate to those who were not intended to have it. And especially should we be governed by our own decision in *Hanson's case,* and refuse to follow the New York cases cited by the plaintiffs when it is, at least, questionable whether the Courts of that State would enforce the statute in question as against a bequest found in the will of a Maryland testator. *Cross* v. *Trust Co.,* 131 N. Y. 348; *Hope* v. *Brewer,* 132 N. Y. 126; *Damont* v. *Osborne,* 140 N. Y. 40. In the case last cited it was held that there was no law that prohibited gifts to charity there by testators in other countries, or that requires New York Courts to reject the gift because it might not in all respects be in conformity with the local law of that State. "There

are other statutes," said the Court, " that invalidate testamentary gifts to certain corporations unless made within a certain time before death, when the testator has wife, child or parents. But these restraints applied to members of the political community from which the law emanated and not to persons in other countries where no such restrictions existed. Bequests by such persons to those corporations, without regarding the statutes referred to, would be good if valid at the domicile of the testator. Our law permits the citizens or subjects of other countries to dispense charities here *in such measure as they wish, and according to such methods as their own laws prescribe.* The policy which dictated our statutes against perpetuities and accumulations did not anticipate any danger from abroad, and our recent decisions are to the effect that they are local in their general scope and effect." We do not overlook the fact that it was earnestly contended that the language just quoted and similar language used in other cases by the same tribunal, does not, and was not intended to refer to the whole of section six, and especially not to that part of said section which is here relied on and which it is claimed restricts the power of the legatee. But whatever may have been the intention, the language of the Court is that testators in other States may dispense charities in New York " in such measure as they wish, and according to such methods as their own laws prescribe." It would seem, therefore, that the law of New York in such a case as this would govern neither the amount of a bequest, nor the method, that is the time when, nor the manner in which it is to be bequeathed. But be this as it may, our rule as applied to this case is clear and distinct, and we follow it because we are bound to do so, and because by so doing we gratify and do not frustrate the testator's expressed wishes.

Having held that the residuary clause stands and that the residuary legatee takes the whole of the residuary estate it becomes unnecessary to consider the questions presented by the objections raised to the 75th clause, because

it is provided by the residuary clause that if any of the charitable bequests, legacies or devises for charitable uses or public or local improvements or benevolent purposes made by the will shall fail to take effect, they shall go to the residuary legatee. Therefore in no event can the heirs or next of kin have any interest in the question of the validity or invalidity of the seventy-fifth clause. The residuary legatee being alone interested in having this clause set aside, has abandoned and disclaimed all right to any of the bequests therein made, and has expressly insisted upon the validity of the will and every part of it.

It follows, therefore, first, that the 76th or residuary clause is free from the objection that it creates a perpetuity ; second, that the residuary legatee will take the whole of the testator's residuary estate, the heirs and next of kin having no right to raise the objection of its want of corporate capacity to take more than the amount limited by section six of the said Act of 1848 ; and, third, that the seventy-fifth clause is to be taken and considered as valid.

*Decree reversed and cause remanded,*
*costs to be paid out of the estate.*

(Decided January 7th, 1897.)