THE EQUITABLE TRUST COMPANY OF NEW YORK, Successor by Merger to COLONIAL TRUST COMPANY as Trustee under Certain Trust Agreement, Dated October 10, 1905, between CARL F. PALFREY and COLONIAL TRUST COMPANY, Plaintiff, *v.* EDGAR G. PRATT as Executor of the Last Will and Testament of CARL F. PALFREY, Deceased, et al., Defendants.

(Supreme Court, New York Special Term, January, 1922.)

Trusts — deed containing revocation clause — directions as to payment of income, principal and accumulated dividends, etc.— colleges to take in event of no survivor capable of taking — subject matter of trust was in New York when settlor, who died a resident of California, executed deed in Mexico — no suspension of absolute ownership beyond two lives in being — contingent remainders — evidence — depositions of executor of settlor and another interested in event of action incompetent under Civil Practice Act, § 347 — burden of proof as to change of domicile of settlor from United States to Mexico.

A deed of trust containing a revocation clause provided that all the dividends, interest and income collected by the trustee should be paid to the settlor of the trust, so long as he should live, and thereafter to a nephew during his life and

upon his death to his wife for life, with direction that upon
the death of both the nephew and his wife the trustee should
pay one-half of the principal and unpaid accumulated divi-
dends, interest and income, to Harvard College absolutely, and
one-fourth to another college absolutely.    The remaining one-
fourth in equal shares was to be paid to the niece and two
nephews of the settlor, or to such of them as should survive
him, with proviso that if any of them predeceased him leaving
issue the share of any deceased nephew or of the niece was to
be paid to their surviving issue.    If there were no survivor
capable of taking the last quarter of the trust property, two-
thirds thereof was to go to Harvard College and the remainder
to the other college.    The settlor, shortly before leaving
Mexico, where he had resided for about four years, to take
residence in California where he died and where his will was
admitted to probate, duly acknowledged the execution of the
trust agreement before the United States consul in the city of
Mexico, and the trustee, in the city of New York, to whom the
instrument had been mailed by the settlor, executed the same
in the usual New York form.    The subject matter of the trust
was then in the city of New York, and the beneficiaries there-
under within the United States.    .In an action for the judicial
settlement of the accounts of the successor trustee and for a
determination as to the validity of the trust agreement, and
whether the beneficiaries were entitled to take their respective
shares therein mentioned, the executor of the settlor asked for
a decree giving to him in his representative capacity the corpus
of the trust fund for distribution under the will of his testator,
upon the grounds (1) that no trust was created by the alleged
trust agreement because the settlor did not at any time divest
himself of the legal title to the subject matter of the trust;
(2) that under the Mexican law, which it was claimed was con-
trolling, the purported trust agreement was invalid for any
purpose; (3) assuming that the settlor did divest himself of
title, the attempted trust was invalid under the law of New
York, and (4) that in any event the one-fourth contingent
remainder to niece and nephews or their issue, with gift over
to the colleges, was also invalid under the laws of New York.
*Held*, that because of the reserved power of revocation the
trust deed did not suspend the absolute ownership of the prop-
erty, measured by the lives of the settlor and the nephew and
his wife.

The gifts over in favor of the colleges of one-half and one-quarter respectively of the trust property were contingent and not vested, but both were valid, and will vest after the expiration of the only two measuring lives.

The remaining one-quarter of the trust fund upon the death of the life beneficiaries was also contingent, but after the termination of the two measuring lives will vest absolutely in one or more of the persons mentioned, if living, or in their surviving issue, and failing any such, in the two colleges, and the only uncertainty is as to the persons in whom said quarter of the trust fund will vest after the termination of the limiting life estate.

Where duly taken depositions of the executor and of another witness also interested in the event of the action within the meaning of section 347 of the Civil Practice Act, were offered in evidence in support of a claim that the settlor of the trust had changed his domicile from the United States to Mexico, an objection to their reception as incompetent, on the ground that it was sought to prove a Mexican domicile by the settlor's own statement to said witnesses, will be sustained. The depositions having been excluded there was not sufficient other evidence to sustain the claim of a change of domicile.

Action for settlement of accounts of trustee under a trust agreement.

Murray, Prentice & Aldrich (H. Tweed, of counsel), for plaintiff.

George O. Redington (H. C. Beach, of counsel), for defendant Edgar G. Pratt, as executor, etc.

Emmet, Marvin & Roosevelt, for defendants Avon Home of Cambridge, Mass., and Harvard College.

Edward B. Boir, for defendants Durfee L. Palfrey et al.

Davis, J.   This action is brought for the judicial settlement of the accounts of the plaintiff, Equitable

Trust Company, under a certain trust agreement, dated October 10, 1905, executed by and between Carl F. Palfrey (since deceased) and the Colonial Trust Company, predecessor of this plaintiff. In its prayer for relief plaintiff asks the court to pass upon the validity of the provisions of the trust agreement and to decide whether or not the persons named as beneficiaries in the trust agreement are entitled to take their respective shares therein mentioned. The defendant Edgar G. Pratt is the executor under the will of said Carl F. Palfrey. Letters testamentary were issued to him November 24, 1920, by the Superior Court in the county of San Bernadino, California, where Carl F. Palfrey was domiciled at the time of his death (October 17, 1920), and he asks for a decree giving to him as executor of Carl F. Palfrey the corpus of the trust fund referred to for distribution under Palfrey's will upon the grounds that, *first,* no trust was created by the alleged trust agreement executed by Palfrey October 19, 1905, because Palfrey did not at any time divest himself of the legal title to his property; *second,* Palfrey being domiciled in Mexico at the time of the execution of the trust agreement, the law of Mexico is controlling, and under such law the purported trust agreement is invalid for any purpose; *third,* assuming that Palfrey did divest himself of title, the attempted trust is wholly invalid under the law of New York; *fourth,* in any event, the one-fourth contingent remainder to the nieces and nephews, or their issue, with gift over to Harvard College and Avon Home, is invalid under the law of New York. First, as to the question of the application of the law of Mexico to the execution of the trust agreement: It is conceded by all the parties that the instrument was not executed according to the requirements of the law of Mexico. The executor claims that

Palfrey was domiciled in Mexico at the time of his execution of the trust instrument, and that having failed to observe the formalities of the Mexican law in its execution the deed is invalid. It is clear that Palfrey did not consider the Mexican law in making the trust agreement, but had in mind the New York law. He acknowledged its execution before the consul-general of the United States in the city of Mexico. He then mailed the document to the Colonial Trust Company in New York, where the latter executed it in the usual New York form. The property which is the subject matter of the trust was then in New York and the beneficiaries were in the United States. These facts alone uphold in some degree the view that Captain Palfrey did not consider himself as domiciled in Mexico. Had he deemed himself so domiciled, it is natural to expect that he would have observed the formalities of the Mexican law in executing the trust deed. However, attaching only slight weight to these circumstances, the other evidence properly in the case on the side of defendants Pratt and Utter fails to sustain the burden of proving that Palfrey changed his domicile to Mexico. Prior to going to Mexico in 1901, Captain Palfrey was an American citizen domiciled in Wilton, Mass., where he maintained a home and where his nearest relatives lived. He had traveled extensively in search of health, and finally took up his residence in Mexico as a suitable place for him to live in. He moved some of his furniture to Mexico and established a comfortable home. He remained there until some time in 1905, when he left Mexico for good and took up his residence in California, where he died, leaving a will which was probated in California. Just before leaving Mexico to take up his residence in California Captain Palfrey executed the trust agreement in question. In support

of their claim that Palfrey had changed his domicile from the United States to Mexico, the defendants Pratt and Utter offered their depositions taken pursuant to statute. Most of this testimony related to communications between the witnesses and Captain Palfrey. This testimony was objected to as incompetent on the ground that it was sought to prove a Mexican domicile for Palfrey by means of his own statement to parties interested in the event of this action within the meaning of section 347 of the Civil Practice Act. In my opinion this objection must be sustained and the testimony excluded. The defendants Pratt and Utter are parties interested in the event of this action. Their testimony is offered in their own interest against the Equitable Trust Company and the beneficiaries under the trust, who derive their interest through Captain Palfrey, a deceased person. In other words, these witnesses seek by testifying to their transaction with the deceased to defeat his act and deed in their action against those whose interest is derived from and through the deceased. Even with their testimony remaining in the case I should hesitate to find that these defendants had proved a change of domicile on Captain Palfrey's part. Without it, I am convinced the claim of a change of domicile is not sustained. There remains the question whether the trust agreement is valid under the laws of New York. The defendants Pratt and Utter contend that the trust is wholly invalid under the New York law, that by its terms the absolute ownership of the personal property is suspended for a longer period than during the continuance and until the termination of two lives in being at the date of the instrument. Pers. Prop. Law, § 11. They claim that the absolute ownership is suspended for three lives, that of the settlor, of Hersey Goodwin Palfrey and of Mrs. Dur-

fee L. Palfrey. The trust agreement provides: " The trustee hereunder shall have power and authority to collect the dividends, interest or income from and on all and several the securities deposited hereunder, as well as on all the securities or property which may hereafter be deposited with the said trustee and made subject to the terms of this trust agreement, and the trustee shall pay over all dividends, interest or income when collected in the manner following: *First.* The whole of the dividends, interest or income collected by the trustee hereunder shall be paid by the trustee to the said Carl F. Palfrey, party of the first part, so long as he shall live. *Second.* After the death of said Carl F. Palfrey the dividends, interest or income collected by the trustee hereunder shall be paid by the trustee to Hersey Goodwin Palfrey during his life, and upon his death to his wife, Durfee L. Palfrey, during her life, and upon the death of both said Hersey Goodwin Palfrey and his wife, Durfee L. Palfrey, the principal and unpaid accumulated dividends, interest and income remaining in the hands of the trustee hereunder shall be paid as follows: One-half to Harvard College, absolutely. One-quarter to the Avon Home, of Cambridge, Massachusetts, absolutely. One-quarter thereof, in equal proportions, to the niece and nephews of said Carl F. Palfrey, as follows: Margaret G. Baker, Robert Palfrey Utter and Richard Van Winkle Utter, or to such of them as may be then surviving, or if any of them be not then surviving and leave a child or children him or her surviving, then the share of said deceased nephew or niece to go to such child or children of said deceased nephew or niece. If there be no survivor capable of taking the last mentioned quarter, then two-thirds thereof shall go to Harvard College and one-third thereof to the Avon Home of Cambridge, Massachusetts." The agreement

also provides that " this trust shall be revocable at
will by the party of the first part by notice in writing
signed by the party of the first part and delivered to
the trustee." As a result of the revocation clause the
absolute ownership was not suspended at all during
Palfrey's life. Ownership would not be suspended
until Palfrey should die without having revoked the
trust. Upon the happening of that event absolute
ownership would be suspended only during the lives
of Hersey Goodwin Palfrey and Durfee L. Palfrey.
Captain Palfrey's ownership of the trust fund was as
absolute after the execution of the trust instrument
as it was before because of his reserved power of revo-
cation. Referring to a reserved power of revocation
in a trust instrument similar to the one in question
here, the court, in *Van Cott* v. *Prentice,* 104 N. Y. 45,
54, said: " The existence of that (power of revoca-
tion) inevitably leaves in the settlor an absolute con-
trol, since at any moment he may end the trust and
resume possession of the fund as his own. The trus-
tee is directed to hold the fund and invest and reinvest
and pay over as ordered, but is to do all this subject
to the settlor's absolute control. This cannot mean
that the trustee is to have no title and the trust no
effective existence, and the property remain in the
settlors, but that the trust and the title, good and
effectual while it stands, is nevertheless to continue
and exist only at the will and pleasure of the settlor."
In the article on " Perpetuities," by Professor War-
ren (30 Cyc. 1511), it is stated: " If a trust
is created by deed in favor of the settlor for
life, and then over, and the settlor has a power
of revocation, there is no suspension during the
settlor's life." *United States Trust Co.* v. *Chauncey,*
32 Misc. Rep. 358; *Pulitzer* v. *Livingston,* 89
Me. 359. I, therefore, conclude that the trust deed

before the court did not suspend the absolute owner-
ship of the property for a period measured by the
lives of the three persons mentioned, Captain Palfrey,
Hersey Goodwin Palfrey and Durfee L. Palfrey.
There remains the question of the validity of the re-
mainder in favor of Harvard College, the Avon Home
of Cambridge and of the nieces and nephews of the
trustor. In the 2d paragraph of the trust instrument
Palfrey directed that after the termination of the life
estates "the principal and unpaid accumulated divi-
dends, interest and income remaining in the hands of
the trustees hereunder shall be paid as follows: One-
half to Harvard College, absolutely; one-quarter to
the Avon Home of Cambridge, Massachusetts, abso-
lutely; one-quarter thereof, in equal proportions, to
the niece and nephews of said Carl F. Palfrey, as fol-
lows: Margaret G. Baker, Robert Palfrey Utter and
Richard Van Winkle Utter, or to such of them as may
be then surviving; or if any of them be not then sur-
viving, and leave a child or children him or her sur-
viving, then the share of said deceased nephew or
niece to go to such child or children of said deceased
nephew or niece. If there be no survivor capable of
taking the last mentioned quarter, then two-thirds
thereof shall go to Harvard College and one-third
thereof to the Avon Home of Cambridge, Massa-
chusetts." In my opinion the gifts to Harvard Col-
lege of one-half of the trust fund and to the Avon
Home of Cambridge of one-quarter thereof are con-
tingent, not vested, but both valid. The instrument
directs that after the death of the life tenants one-half
of the principal and income remaining shall be paid
to Harvard College, absolutely, and one-quarter to the
Avon Home, absolutely. The direction is simply "to
pay" after the death of the life beneficiaries under
the trust. Nowhere in the instrument do we find pro-

visions indicating an intention to make a present and vested gift of those shares of the trust fund. As was said in *Wright* v. *Wright,* 225 N. Y. 329, 336: " Under these circumstances we have the simple case, free from complications, where there is no gift but by direction to trustees to pay at a future time, and in such a case it is perfectly well settled that the legacy will not vest in the beneficiary until the time for payment arrives." Eliminating, as we have done, Captain Palfrey himself as one of the measuring lives, because of his reserved power of revocation of the whole trust, it is clear that the remainders in favor of Harvard College and the Avon Home of one-half and one-quarter, respectively, will vest after the expiration of only two measuring lives, those of Hersey Goodwin Palfrey and Durfee L. Palfrey. The provision disposing of the remaining one-quarter of the trust fund upon the death of the life beneficiaries is also contingent, but it was obvious at the date of the trust instrument that the one-quarter in question would vest absolutely after the termination of two measuring lives in one or more of the persons mentioned, if living, or in their surviving children, or failing any of these capable of taking, in Harvard College and in the Avon Home. When the two life estates end there will be a vesting of the one-quarter in some of the parties mentioned in this paragraph of the trust instrument. There is no uncertainty about the time and fact of vesting. The only uncertainty is as to the persons in whom the one-quarter will vest after the termination of the limiting life estates. Findings and conclusions have been filed.

Judgment accordingly.