RYAN *v.* WARD ET AL.

[No. 74, October Term, 1948.]

344

*Decided February 16, 1949.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*J. Cookman Boyd, Jr.*, for James J. Ryan, Guardian ad Litem.

*Harry E. Silverwood* for Baltimore National Bank, Substituted Trustee.

*J. Britain Winter*, with whom were *Winter and Bowen* on the brief, for Ruth E. Ward et al.

MARBURY, C. J., delivered the opinion of the Court.

On April 16, 1928, John R. Ward of Baltimore City executed and delivered a deed of trust to the Baltimore Trust Company conveying to the latter certain personal property consisting of stocks and bonds. The record does not show the value of this personal property at the date of the deed of trust, but it appears that the corpus of the estate, as of September 26, 1945, was approximately $32,500. John R. Ward died on October 27, 1928 and Frank R. Ward, who was given a life estate by the terms of the deed of trust, died on September 26, 1945, as of which date the estate was valued as above set out. In 1934 the Baltimore Trust Company was removed as trustee by an order of the Circuit Court No. 2 of Baltimore City, and the Baltimore National Bank was appointed substituted trustee. The latter filed its bill of complaint in the Circuit Court of Baltimore City in

1946, asking for a construction of the deed of trust, and naming as parties all the living parties who might possibly have an interest in the matter, as well as the administratrix *d. b. n. c. t. a.* of the estate of John R. Ward. By the will of John R. Ward, all of his estate and property was left to his son, Frank R. Ward, if the latter survived him, which was the case. Frank R. Ward, who was a resident of New Jersey, left a will by which all of his estate was left to his wife, Olive Maria Ward, provided she survived him, which was the case. He also left three children, Ruth E. Ward, David E. Ward, and John F. Ward. Olive M. Ward is the executrix of the estate of Frank R. Ward and also the administratrix *d. b. n. c. t. a.* of the estate of John F. Ward. James J. Ryan was appointed by the court as guardian *ad litem* for all persons not in being whose interests might be affected by the proceedings. Answers were filed by the guardian *ad litem,* and the parties in being, and testimony was taken, after which the chancellor filed his decree holding some of the future interests good and some void. From this decree the guardian *ad litem* appeals here, and cross appeals were filed by all other parties.

The deed of trust gives the trustee full and complete power to manage, sell, reinvest, and otherwise deal with the trust estate, and to collect the dividends and profits and to pay over the entire net income in monthly installments to the grantor, John R. Ward, during the term of his natural life. It is further provided that "* * * during the life of the Grantor he shall have the right by one or more instruments in writing, personally signed by him and delivered to the Trustee, to withdraw from the operation of this Deed of Trust such sum or sums as he may in his absolute discretion see fit, such withdrawals, however, shall not be in excess of the sum of Fifteen Hundred Dollars ($1500.00) per annum during his lifetime, and to the extent of any sum or sums so withdrawn, the principal of the trust hereby created shall be reduced accordingly, or expended entirely." It is further provided by the deed of trust:

"From and after the death of the Grantor, the Trustee shall pay over the net income derived therefrom in monthly instalments unto FRANK R. WARD, son of the Grantor, during his lifetime, and upon the death of the Grantor's said son, FRANK R. WARD, or from and after the Grantor's death in case his said son should predecease him, the Trustee shall pay the net income derived from the trust fund unto the lineal descendants, *per stirpes,* from time to time living, of the Grantor's said son until the death of the last surviving child of the Grantor's said son, who shall be living at the time of the Grantor's death, and upon the death of the last surviving child of the Grantor's said son, who shall be living at the time of the death of the Grantor, the trust hereby created shall terminate, and the corpus or principal thereof shall be by the Trustee conveyed, delivered and paid over absolutely free, clear and discharged of any further trust, in equal and even shares unto the then living children of the Grantor's said son, and unto the issue then living of each then deceased child of the Grantor's said son, so that each then living child of the Grantor's said son shall take and receive, absolutely, one equal share thereof, and the issue then living of each then deceased child of the Grantor's said son shall take and receive, *per stirpes* and not *per capita,* one equal share thereof absolutely."

There is a spendthrift provision for both principal and income, applicable after the death of the grantor, and it is also provided that the Trustee shall have authority to receive any other funds granted, devised, or bequeathed by the grantor or any other person for the uses of the trust created, with a proviso that during the life of the grantor, at his written request, the Trustee is directed to pay over to him the principal of any funds or property, or any part thereof, which may be received by the Trustee as an addition to the original principal of the trust. This right of withdrawal is limited to the additions to the trust fund.

348

The question before the court is whether any of the estates attempted to be created by this deed of trust are in violation of the rule against perpetuities. This rule requires that an interest or an estate, to be good, must vest not later than twenty-one years, plus the usual period of gestation, after some life in being at the time of its creation. In determining its applicability, the court looks forward from the time of the taking effect of the instrument in question to determine whether a possible interest is certain to vest within the prescribed period. *Perkins v. Iglehart.* 183 Md. 520, 39 A. 2d 672. The rule was established by the courts to preserve the freedom of alienation, and to prevent restrictions on the circulation of property. *Safe Deposit & Trust Co. v. Sheehan,* 169 Md. 93, 179 A. 536.

Where an interest or an estate is created by will, the question is determined by looking forward from the date of the taking effect of the will which is, of course, the death of the testator, and not the date of the will. *Gray's The Rule Against Perpetuities,* 3rd Ed., Paragraph 231, p. 205; 4th Ed., Paragraph 231, p. 235. Where the interest or estate is created by deed, its effectiveness *vel non* is determined as of the time "when the deed became operative." *Bowerman v. Taylor,* 126 Md. 203 at page 212, 94 A. 652, 654; *Goldberg v. Erich,* 142 Md. 544, at page 548, 121 A. 365; *Hawkins v. Ghent,* 154 Md. 261, at page 265, 140 A. 212; *Miller on Construction of Wills,* Paragraph 323, p. 914.

The appellant Ryan suggests (without any citation of authority) that since there is an element of revocability in the deed, the effective date from which we must consider the succeeding estates is not the date of the execution and delivery of the deed, but the date of the death of the grantor. The element of revocability is the right of withdrawal of the original trust fund, not, however, to be "in excess of the sum of $1500.00 per annum during his lifetime" and the unlimited right of withdrawal of any funds or property, or any part thereof which may have been added to the trust estate from time to time.

The terms of the provision authorizing the withdrawal of the original principal do not clearly indicate whether this right is cumulative or not, that is, whether the right must be exercised each year, if at all, or whether the grantor could withdraw at any time, not only the $1500 allowed during that year, but also $1500 for each previous year in which he had not exercised the right. Since, however, the grantor attempted to put a limitation upon his own actions, and did not reserve to himself the right to withdraw any or all of the original principal at any time he saw fit, while reserving that right as to subsequent additions. we hold that the right should be construed as non-cumulative, and lost as to the amount authorized to be withdrawn in any year, if not exercised during that year. We are not advised what was his age at the time he created it. No matter what it was, we cannot assume, viewing it prospectively, that he would not live long enough to withdraw the entire principal. Until the grantor actually died, therefore, he had the possible right to destroy the trust estate by withdrawals, although this destruction could be only partial until the end of twenty-two years.

Professor Gray, in his work *"The Rule Against Perpetuities"* (3rd Ed., Paragraph 203, p. 175; 4th Ed., Paragraph 203, p. 193), states that "* * * a future interest, if destructible at the mere pleasure of the present owner of the property, is not regarded as an interest at all and the Rule does not concern itself with it." This statement is applied to revocable trusts in Paragraph 524.1 of the 4th Edition beginning on page 510. This paragraph is the work of Roland Gray, son of the original author, who died in 1915. The 4th Edition was prepared in 1942. In paragraph 524.1 a case is suggested where a conveyance is made to A for life, with a power of revocation, A being the settlor, and, in default of exercise, to A's children at 25. If the period of the rule against perpetuities runs from the date of the conveyance, the ultimate limitation is too remote, but the author states that it seems to be correct to take A's death as

the critical date, because A is at liberty to destroy the future interest. He cites the prevailing doctrine that the remoteness of limitations under a general power to appoint by deed is to be reckoned from the exercise of the power, as a reason why the same construction, by analogy, should be used in a revocable deed. In that connection he approves the reasoning of the Supreme Court of Hawaii in the case of *Manufacturers' Life Insurance Company v. von Hamm-Young Company,* 34 Hawaii 288. The case, decided in 1937, involves the application of the rule against perpetuities to a life insurance trust agreement. The settlor reserved the right to revoke the trust agreement or change the beneficiary. If the trust became effective at the time of its execution, there was a possibility that the future interest might not vest within the required period after that date. On the other hand, if the future interest did not come into being until the death of the settlor, no transgression of the rule could occur. The court, on the authority of Gray and of other cases, determined that the effective date from which to view the future interest was the death of the settlor, on the ground that such interest was destructible at his pleasure up until that time.

In the case of *Hillyard v. Miller,* 10 Pa. 326, 334, the learned Chief Justice Gibson cited *Lewis on Perpetuities,* Chapter 12, as giving the nearest approach to a perfect definition of a perpetuity. See *Graham v. Whitridge,* 99 Md. 248, at page 274, 57 A. 609; 58 A. 36, 66 L. R. A. 408. This definition included a provision that the future limitation which would not necessarily vest within the prescribed period should not be destructible by the person for the time being entitled to the property, except with the concurrence of the person interested in the contingent event. The Chief Justice said: "It was the indestructibility * * * of future trusts which forced upon the judges the rule against perpetuities, in order to set the bounds to the remoteness of, not only legal, but equitable limitations; and it acts upon perpetuities wherever they appear, except in conveyances in mortmain, or

to charitable uses." That decision was used as a basis for holding that a deed of trust with a power to sell in the life tenant and use the proceeds was destructible, and therefore not subject to the rule against perpetuities. *Miffiin's Appeal,* 121 Pa. 205, 15 A. 525, 1 L. R. A. 453, 6 Am. St. Rep. 781. See also *Cooper's Estate,* 150 Pa. 576, 24 A. 1057, 30 Am. St. Rep. 829. The Supreme Court of the United States, in the case of *Goesele v. Bimeler,* 14 How. 589, 14 L. Ed., 554, decided that an agreement by members of a religious society called "Separatists," composed of Germans who had emigrated to the United States, by the terms of which the parties renounced all individual ownership of property, present and future, and transferred such property to three directors, was not a perpetuity because the majority of the members might require sale of the property at any time and therefore, even though the articles of association provided for its continuance for an indefinite period of time, nevertheless it was destructible at any time by the will of the majority. In the case of *Pultizer v. Livingston,* 89 Me. 359, 36 A. 635, the court held that the rule against perpetuities did not apply to future interests which were destructible at the will and pleasure of the present owner. The deeds in question in that case contained express powers of revocation, and the court held that they were thereby removed from the operation of the rule against perpetuities. In the case of *Equitable Trust Co. of New York v. Pratt,* 117 Misc. 708, 193 N. Y. S. 152, the Supreme Court of New York had before it a trust agreement which provided that it was revocable at will. The New York statute, which took the place of the common law rule against perpetuities, provided that the absolute ownership of property should not be suspended for a longer period than two lives in being at the date of the instrument. In the case before it, there was a suspension for three lives on the face of the deed of trust, but the court held that as a result of the revocation clause, absolute ownership was not suspended at all during the life of the settlor, and therefore the New York statute

did not commence to operate until after his death. In *Lewis on Law of Perpetuity*, Law Library Ed., Ch. XX, p. 483, it is stated that "the great aim of the laws against remoteness is secured in the immediate and unrestrained alienability of the property by means of a power of appointment." In an article in 45 *Harvard Law Review*, beginning at p. 896, the effect of the rule against perpetuities on insurance trusts is discussed, and the conclusion is reached that in calculating the period of perpetuity the courts have wisely excluded that period during which the property was subject to the absolute control of a single person. In another article in *51 Harvard Law Review* by W. Barton Leach, entitled *"Perpetuities in a Nutshell,"* at p. 638, it is stated: "So long as one person has the power at any time to make himself the sole owner (of the trust estate) there is no tying-up of the property and no violation of the policy of the rule against perpetuities." In *86 Univ. of Pa. Law Review* 221, the decision of the Hawaii court above quoted is discussed and is stated to be the first decision on the question. The writer says that "unhampered by precedent, the Hawaiian court has enunciated a salutory rule which should be followed in this country."

A contrary view is taken by a member of the Ohio Bar in an article on "The Rule Against Perpetuities as Applied to Living Trusts and Living Life Insurance Trusts" found in *11 University of Cincinnati Law Review* beginning at p. 327.

*Restatement, Property,* Section 373, states "The period of time during which an interest is destructible, pursuant to the uncontrolled volition, and for the exclusive personal benefit of the person having such a power of destruction is not included in determining whether the limitation is invalid under the rule against perpetuities." Comment d states that the required destructibility exists only when some person possesses a complete power of disposition over the subject matter of the future interests, and can exercise this power of disposition for his own exclusive benefit. The destructibility prerequisite for an ap-

plication of the rule stated in Section 373 can exist when the power of disposition (or revocation) is not presently exercisable at the time of its creation, provided that the period, during which the exercise of such power is postponed, does not invalidate all interests created by the exercise of such power, and thus, in effect, invalidate the power itself.

These cases and statements from recognized authorities amply sustain the proposition that, where a settlor has power during his lifetime to revoke or destroy the trust estate, the question whether interests, or any of them, created by a deed of trust are void because in violation of the rule against perpetuities, is to be determined as of the date of the settlor's death, and not as of the date when the deed of trust takes effect. It will be observed, however, that the cases cited involve situations where the trust is revocable at will, or could be destroyed by a single act of the settlor such as a change of beneficiary in an insurance policy, or a sale of the trust property and the use of the proceeds. It is stated in the article in *51 Harvard Law Review,* already referred to, at p. 663:

"The situation is analogous to future interests after an estate tail, where the period of perpetuities is computed from the date of expiration of the estate tail; the power to disentail makes the tenant in tail the substantial owner and causes interests after the estate tail to be in substance gifts by the last tenant in tail at the time of expiration of his estate. The situation is also analogous to gifts in default of the exercise of a general power by deed or will, the period of perpetuities being computed from the expiration of the power—*i. e.,* the death of the donee."

There is no case, so far as we have been able to find, which deals with a strictly limited power of withdrawal which can be exercised only over a period of years, and which cannot be used to destroy the entire estate until a number of years has elapsed. In the case before us, as we have shown, the estate could not be entirely destroyed during the first twenty-two years of its existence.

There is some difference of opinion among the text writers whether the power to encroach upon the corpus is the same as the power to revoke. Professor Scott thinks it is. *Trusts,* Paragraph 330.-11. Bogert thinks not. Vol. 4, *Bogert on Trust and Trustees,* Part 2, § 994. The cases we have cited indicate that it is not the method of destruction but the destructibility which is the controlling factor. That being so, we are unable to say that in a case such as the one before us the trust estate is destructible, as that word is used in connection with the Rule against Perpetuities. There is a possibility of ultimate destruction, but the estate is not destructible at the time of its creation, or at any one time thereafter. Any destruction must be by a gradual diminishing of the corpus, until, at the last, there is left only a balance equal to the amount which can be withdrawn in any year. At that time, the grantor can destroy the trust, but his right to do so is contingent upon the previous withdrawals, and does not become absolute until he has completed all such withdrawals, over a period of years. What would be the situation if the settlor were given power to revoke after twenty-two years, or power to withdraw the entire trust estate at that time, need not be decided, because we have no such situation here. It is our conclusion, therefore, that the rule against perpetuities operates upon the estates created, as of the date of the execution and delivery of the deed of trust.

There is, of course, no question that the beneficial life estate of Frank R. Ward, son of the grantor, was valid. Thereafter, the net income is to be paid *unto the lineal descendants per stirpes from time to time living* of Frank R. Ward until the death of the last surviving child of said Frank R. Ward who shall be living at the time of the death of the grantor. At that time, the trust is to terminate, and the residuary estates are to commence. It is apparent that Frank R. Ward could have had a son born prior to the death of John R. Ward, who could have been living at the death of John R. Ward, and who could have lived more than twenty-one years after the death

of Frank R. Ward. The death of such child, if he were the last survivor of the children of Frank R. Ward, would fix the date of the ending of the trust estate and the commencement of the estates in remainder created by the deed of trust. It was quite within the bounds of possibility, at the time of the creation of the trust, that this date might be beyond a life and lives then in being and twenty-one years thereafter, plus the usual period of gestation. Consequently, it is agreed by everyone, and the court so held, that the remainders, after the termination of the trust estate, were void.

The gift of the beneficial estates *pur autre vie,* after the death of Frank R. Ward which gift, as we have shown, is to the lineal descendants per stirpes, *from time to time living,* of the grantor's son, might vest in one of those lineal descendants who was born more than twenty-one years after the death of Frank R. Ward, but before the death of his last surviving child. This is a class gift. In such a case, it is well recognized that if it "is good as to some members of the class, but is within the rule against perpetuities as to other members, the entire gift must fail. The general rule is that if a gift is void as to any of a class, it is void as to all of the class." *Miller, Construction of Wills,* Paragraph 328. The reason for this rule is that the courts cannot split into portions the gift to the class, and make these gifts what they were never intended to be by the grantor. *Goldsborough v. Martin,* 41 Md. 488, at page 502; *Albert v. Albert,* 68 Md. 352, 12 A. 11; *Bowerman v. Taylor,* 126 Md. 203, 94 A. 652.

The contention was made in this case, and upheld by the chancellor, that the gifts *pur autre vie* were not gifts to one class, but were gifts to three classes, since there were two sons and a daughter of Frank R. Ward who survived him and who were living at the time of the execution of the deed of trust. The chancellor said that, therefore, as to each of the classes represented by each of these children, they vested in the living children within the period. This result cannot be reached by considering

what actually happened. It must be arrived at, if at all by considering what the grantor intended should happen.

In the case of *Albert v. Albert,* 68 Md. 352, 12 A. 11, 17; a distinction, followed by this court in its subsequent decisions, is made clear. In that case, Judge McSherry said (p. 373) : "It is undoubtedly true that where bequests are made to a *class,* and some of the class are *in esse* and capable of taking without violating the rule, and some are not, the whole bequest must fail. * * * But where the bequests have been made to individuals, some of whom are capable of taking and some of whom are not, a different consequence follows." The case of *Wilson v. Wilson,* 4 Jur. N. S. 1076, is given as an example of the latter class of cases, and these words quoted from it: "Here, however, the children of each child of J. L. form a separate class, and the share of each class is separately ascertainable."

In the case of *Turner v. Safe Deposit & Trust Co.,* 148 Md. 371, 129 A. 294, 295, the remainder of the estate was to be *divided* by the trustee, after the death of the testator's wife, "into as many parts as my brother Barreda shall have children living at the time of the death of my dear wife, the child or children of any deceased child * * * if any then living to be treated as representing his or her parent." After the death of "each of said children" his or her share was to become the absolute property of "his or her children" then living, with a *per sirpes* provision for children of deceased children. In the absence of children or descendants then living, the share was to go to brothers and sisters and their descendants *per stirpes* then living. The Court held "The final limitations in legal remainder were to distinct classes of persons who were to take the respective parts of the estate into which it was to be separated" and followed the rule quoted from *Gray on Perpetuities,* 3rd Ed., sec. 391, that "when, on a gift to a class, the number of the shares is definitely fixed within the time required by the rule against perpetuities, the question of remoteness is to be considered with reference to each share separately."

In the case of *Bowerman v. Taylor, supra,* there was a deed of trust for the benefit of the settlor's wife, during his and her joint lives and the lifetime of the survivor, and then to the use of all of the children of the settlor and his wife, those now in being and those who might thereafter be born, and the lawful issue of those children surviving their parents, such issue taking *per stirpes,* and, upon the death of any such children, their interest should go to their heirs or issue, if any, or, if not, their interest should revert to the common fund. There were seven children living at the time of the execution of this deed and no others were thereafter born. All but one of these children survived the grantor and this one died without issue. The court said the life estates following the death of the settlor and his wife were to vest in beneficiaries in existence at the time of the death of a person in being when the deed of trust took effect. The question was in reference to the remainders to the descendants of the children and issue. The court said that these remainders to the descendants of children who were in being when the deed became operative must necessarily vest within the period of the rule, because they are given to those only who are in existence at the death of the person who was living at the date of the deed. The other remainders sought to be created in favor of the descendants of unborn children and issue were in violation of the rule. This decision was made upon the theory that the final disposition of the estate was not to a single class of persons, some of whom might be incapable of taking, but to distinct classes, because upon the death of each of the secondary life tenants, that is, the children, his or her interest is given to his or her descendants absolutely, regardless of the continuance of the life interest of the other children. The remainders limited upon each life estate were disposed of separately by the terms of the deed, and the question of the capacity to take on the part of the descendants of any particular life tenant did not depend upon the status of others claiming under a similar relationship to a different beneficiary.

In the case of *Safe Deposit & Trust Co. v. Sheehan,* 169 Md. 93, 98, 179 A. 536, 539, a testator left the residue of his estate in trust, to pay the net income therefrom "unto such of the children of my son John and the descendants of his deceased children, *per stirpes* who may be living from time to time, as such income is received by my trustee; and upon the death of the last surviving child of my said son John * * * to divide the corpus of my trust estate and to * * * transfer * * * the same * * * between and among the descendants of my said son, John, living at that time, said division and transfer among said descendants, however, to be made *per stirpes* and not *per capita.*" The court said that this class closed only at the death of the last surviving child of John and that since the last surviving child of John might not die until more than twenty-one years and nine months after a life or lives in being at the death of the testator, these provisions violated the rule against perpetuities and were void.

In the case of *Vickery v. Maryland Trust Co.,* 188 Md. 178, 52 A. 2d 100, there was a declaration of trust under which, after the death of the settlor, the income was to be paid in equal parts to the then surviving brothers and sisters, and to nephews and neices, the nephews and nieces to take as a unit *per capita,* and the issue of any deceased nephew or niece to take the part which his or her respective parent would have taken if then living. From the death of the last survivor of the brothers, sisters, nephews, and nieces living at the time of the settlor's death, the principal of the estate should be divided among the nephews and nieces born after the settlor's decease, and the issue of all her nephews and nieces *per stirpes* and not *per capita.* It was considered by all parties and held by us that the ultimate remainders were void, and it was likewise agreed and held that the life interests of the brothers and sisters were valid. The question was the status of the life interest of the nephews and nieces and their issue. We held in that case that, while the share of the nephews and nieces was described as a

unit, that was only for the purpose of fixing the *quantum* of their total share, and, that while the life interests of each nephew and niece and their issue must be dealt with separately, the limitation as to issue could not be sustained because the class of the issue was not closed, but would remain open to let in after born descendants beyond the period prescribed by the rule. We distinguished that case from the *Bowerman case, supra,* because the class of issue was not closed.

In the case of *Reese v. Reese* [*Chism v. Reese*] 190 Md. 311, 58 A. 2d 643, we held that the testator had in mind those whom he knew, that is, those living at the time of his death, and that upon this interpretation all of the remainders had to vest, if at all, not later than the death of a son then living and therefore there was no violation of the rule against perpetuities. In the case of *Evans v. Safe Deposit & Trust Co.* 190 Md. 332, 58 A. 2d 649, decided on the same day as the *Reese* case, and which was concerned with a deed of trust made by Samuel Scribner and wife, we discussed at length the general subject of class gifts, but found it unnecessary to decide whether in that case the gift was to a class or to designated individuals who were at the date of the deed the only living children of the grantor.

We are unable to find in the case before us, as did the chancellor, that the deed of trust before us created three classes. Even though it is true that there were only three children of Frank R. Ward living at the time of the execution of the deed of trust, the provision in that deed does not divide the estate into shares as was the situation in the *Bowerman case, supra.* The words "lineal descendants *per stirpes* from time to time living" do not create three classes. On the contrary, they create one. There is no gift to named children of Frank or even to children of Frank. The gift is to lineal descendants which includes others than children. In the case of *Perkins v. Iglehart*, 183 Md. 520, 39 A. 2d 672, we held that a bequest to the children of a son then living and the descendants then living of his deceased children *per stirpes* cre-

ated only one class, although a stronger argument to the contrary existed in that case than in the one before us:

As a result of our conclusion, we hold that the gifts *pur autrie vie* are void and the trust estate has now ended. As John R. Ward, by his will, left all his property to Frank R. Ward, who was his only child, the trust property belongs to the latter's estate. As we said in *Perkins v. Iglehart, supra,* there is no necessity for the property to be administered through the estate of John R. Ward, thereby multiplying the costs and expenses. Distribution can be made directly by the trustee to Olive M. Ward, Executrix of the estate of Frank R. Ward, and such distribution will relieve the trustee of further responsibility.

> *Decree reversed and case remanded for the passage of a decree in accordance with this opinion. Costs to be paid out of the trust estate.*