## IN RE ESTATE OF SNYDER
(Three Appeals in One Record)

[No. 127, October Term, 1949.]

84

*Decided April 14, 1950.*

The cause was argued before MARBURY, C. J., COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Eben F. Perkins,* with whom was *Walter H. Buck* on the brief, for James Clarke Murphy.

*John H. Herold,* with whom was *John H. Hessey* on the brief, for Bessie S. Walker.

Submitted on brief by *Hall Hammond, Attorney General,* and *Clarke Murphy, Jr., Special Assistant Attorney General,* for the Rosewood State Training School.

*Lester H. Crowther* for the appellees, Elizabeth M. Denit, *et al.*

MARBURY, C. J., delivered the opinion of the Court.

This case arises through a bill of complaint instituted by a trustee in the Circuit Court of Baltimore City, asking for a construction of the residuary clause of the will of John Henry Snyder of Charles. This will was executed on July 22, 1911, and the testator died October 15, 1919.

It is important in the decision of the questions raised to note the situation of the testator at the time he made his will. He was then a widower, 82 years old. He had two living children, Andrew C. Snyder, then 53 years old, and a daughter, Elizabeth H. Webb, who was 58 years old. Andrew C. Snyder had had one son, born in 1885, who had died in 1889. Elizabeth H. Webb had three children, Bessie S. Walker, Helen M. Lengnick and Edna W. Miles, all then living. Bessie S. Walker has had two children, both of whom are dead. Helen M. Lengnick has had one child who is dead, and Edna

W. Miles has had four children, all of whom are living and are parties to this case. At the time of the execution of the will, the testator had a son and a daughter living, and had three grandchildren living, all of whom were granddaughters. It is not quite clear from the record how many great grandchildren were then living, but this is not important. As his son was 53 years old and had had no children for 26 years, and his daughter was 58 years old, while there was a possibility that he might have more grandchildren, on the other hand, it is quite probable that he considered this to be unlikely. Courts cannot assume from the age of parties the impossibility of their having children, *In re Ricards Trust Estate*, 97 Md. 608, 609, 55 A. 384, 63 L. R. A., 145, *Williams v. Armiger*, 129 Md. 222, 234, 98 A. 542, but they can consider the possibilities in order to determine what the testator may have thought when he was making his will. *Reese v. Reese*, [*Chism v. Reese*], 190 Md. 311, 58 A. 2d 643, *In re Wright's Estate*, 284 Pa. 334, 131 A. 188.

The residuary clause which is in question is the second. By it, all the rest and residue of the testator's estate is devised and bequeathed to his son and trustee, to collect the rents, etc. and "pay the net rents, income and profits thereof semi-annually in equal shares unto my said son Andrew C. Snyder and my daughter, Elizabeth H. Webb, wife of James A. Webb, for and during their joint natural lives and from and immediately after the death of my said daughter Elizabeth H. Webb, if she shall predecease my said son, then in Trust to pay the whole of said net rents, income and profits to my said son Andrew C. Snyder, for and during his natural life; and if my said son Andrew C. Snyder shall predecease my said daughter, then and in that event, in Trust, subject to the trusts as to a part of said net rents, income and profits as hereinafter set forth in this second clause of this my last will and testament, pay the whole of said net rents, income and profits to my said daughter Elizabeth H. Webb, for and during her natural life. In the

event of my said son Andrew C. Snyder, predeceasing my said daughter Elizabeth H. Webb, then and in that event, I give, devise and bequeath unto said trustee, his successor or successors, annually during the natural life of my said daughter Elizabeth H. Webb, to be paid out of the annual rents, income and profits of the whole of the rest and residue of my estate and property, the annuity or yearly sum of Five Hundred and Twenty Dollars ($520.00), in Trust to apply the same to the support and maintenance of my ganddaughter, Bessie S. Walker, during the life of my said daughter, Elizabeth H. Webb, and I direct that said annuity shall be paid to my said granddaughter in weekly payments of Ten Dollars ($10.-00) ; and from and immediately after the death of the survivor of my said son and daughter, then in Trust, to pay the said net rents, income and profits, equally share and share alike unto my grandchildren, including my said grand-daughter Bessie S. Walker, for and during their respective natural lives, and from immediately after the death of each of my said grandchildren as it shall occur, then in Trust to pay and deliver over absolutely free and discharged of this Trust unto all of my great grandchildren, living at the time of the death of such grandchild so dying, equally, share and share alike, *per capita* and not *per stirpes,* the share or portion of my estate and property so held in Trust for the grandchild so dying. If it shall so happen that one of my said grandchildren shall predecease my said son and daughter or the survivor of them without leaving a child or children, him or her surviving, then and in that event, I direct that the net rents, income and profits shall be equally divided among my grandchildren living at the time of the death of the survivor of my son and daughter, but if either of my said grandchildren shall predecease my said son and daughter or the survivor of them leaving a child or children, or descendants of a child or children, him or her surviving, then and in that event, I direct that the share or portion of my estate and property which would have been held in Trust for the grandchild so dying, if she

had not predeceased my said son and daughter, shall be paid and delivered to the child or children or descendants of a child or children of such deceased grandchild, absolutely free and discharged of this trust."

Andrew C. Snyder died in 1921, and the Safe Deposit and Trust Company of Baltimore was named trustee in his place. The testator's other child, Elizabeth H. Webb died in 1924. Andrew C. Snyder left a will, naming several charitable and benevolent associations as his residuary legatees. These residuary legatees, under some circumstances, might have an interest in the John Henry Snyder estate, and they have all, therefore, been made parties to this case. Elizabeth H. Webb left the three daughters above mentioned, and by her will, the residue of her estate was to be divided, equally, among these three daughters, who were all then living. The record indicates some possibility that these daughters might take by intestacy instead of under the residuary clause. But her will, and any questions with respect thereto, are not before us, and it is agreed by all parties that her three daughters would take in one way or the other. Two of these daughters are living and are parties to the case. The other daughter, Helen M. Lengnick, died in 1948, and her executor is a party. Her death was the occasion for the filing of the bill in this case, which is to determine where the share of the estate, the income of which has heretofore been paid to her shall go.

The Chancellor decided that this interest belongs to the four great grandchildren *per capita,* under the terms of the will. From this decision appeals were noted by the executor of Mrs. Lengnick, by Bessie S. Walker and by the Rosewood State Training School, one of the residuary legatees under Andrew C. Snyder's will. They all claim that the provision in the residuary clause, directing payment after the death of each of the grandchildren, to the great grandchildren living at the time of such death, is in violation of the rule against perpetuities. This contention is based upon the fact that it might have been possible for another grandchild to

have been born after the death of the testator, who would have shared in the class gift. Such grandchild might have a child who would be the great grandchild of the testator, and the estate of such great grandchild would not necessarily vest within the period required by the rule. They correctly contend that, in determining the question of the applicability of the rule against per-uetuities, the court must look forward to what might happen, and not backward to what did happen. *Gambrill v. Gambrill,* 122 Md. 563, 569, 89 A. 1094; *Perkins v. Iglehart,* 183 Md. 520 527, 30 A. 2d 672; *Ryan v. Ward,* 192 Md. 342, 348, 64 A. 2d 258, 260. The contention on behalf of the great grandchildren, which was that sustained by the Chancellor is that the gift to the grandchildren was not a class gift but was a gift to individuals known to the testator, and, therefore, there could be no estate commencing after the restricted period.

The intention of the testator, as shown by his will, (which we must ascertain before seeing whether the rule against perpetuities applies, *Graham v. Whitridge,* 99 Md. 248, 275, 57 A. 609, 58 A. 36, 66 L. R. A. 408), was to take care of his descendants to the third generation. His children were to get life estates, subject, under some circumstances, to a small annuity to a specially named granddaughter. Then his grandchildren were to get life estates, and when each grandchild died, all of his great grandchildren, and not only those who were the children of the grandchild so dying, were to get absolutely the share of that grandchild *per capita.* This last provision is somewhat unusual, but it may have been the result of his knowing that the only great grandchildren he had were the children of Edna W. Miles, two of whom were then living and the other two were born before his death. However, whatever was his intention in this respect, a division *per capita* was entirely within his power to provide. The question is who were his grandchildren, at whose respective deaths their shares of the trusts were to end and the absolute estates were to vest in the great grandchildren. If this is a class gift

to grandchildren, then it might have been possible for Andrew to have another child after the death of his father who would be entitled to a life estate after the death of the testator's children. If this potential grandchild should die leaving children, who would be great grandchildren of the testator, then the interest of those great grandchildren might vest after a life not in being at the date of the death of the testator and 21 years and the usual period of gestation after the termination of such life. If, therefore, the word "grandchildren" is to be applied in its ordinary and usual meaning, the gift to all grandchildren, including the suggested child of Andrew, would be valid, but the remainder over to the great grandchildren would not, because if it might not be good as to some members of the class, the entire gift would fail. *Albert v. Albert,* 68 Md. 352, 373, 12 A. 11; *Ryan v. Ward, supra.*

If the second paragraph of the will had stopped after the gift over to the great grandchildren, *per capita,* there would be a logical basis for holding that the gift to the grandchildren was a class gift. The testator, however, added another sentence in which he provided what should happen if one of the grandchildren should predecease his children, or the survivor of them without leaving a child or children, and also what should happen if one of the grandchildren should so die leaving children. In the last event he said "I direct that the share or portion of my estate and property which would have been held in trust for the grandchild so dying, if *she* had not predeceased my said son and daughter, shall be paid and delivered, etc." (emphasis supplied). It is the word "she" which, in the opinion of the Chancellor, made it clear that the grandchildren the testator had in mind were the three granddaughters he then had, who would, in all probability in his mind, be the only grandchildren he would have. It would be a very natural thing for a testator, or his draftsman, who speaking of a grandchild, to call that grandchild "she", if all the grandchildren he had were granddaughters. That is an indica-

tion that he was thinking of those three granddaughters when he made his will, and not of other possible but improbable grandchildren who might come along later. It could not well be claimed that the sentence referred only to a situation when a granddaughter predeceased the children leaving children or descendants, and not to a similar case of a possible grandson. We must, therefore, either conclude that the testator meant what he said, or we must disregard what he said entirely and substitute something else for it. The appellants strenuously urge that this word "she" is in a sentence which does not affect the earlier provisions, and that it should not be used to construe them. But this contention cannot be sustained, because we must consider the entire paragraph of the will as one, dealing as it does with the general subject of the residuary estate. The whole paragraph is so integrated that each part of it can, and indeed must, be considered in determining what the testator meant.

The appellants contend that "she" is a mere verbal mistake, and they point to two other things in the same sentence. One is the use of "either" of my said grandchildren, when as a matter of fact he had three, and the other is the use of the words "him or her" surviving. The "either" may be dismissed as a grammatical peculiarity, and the "him or her" clearly indicates the survivor of the son or daughter and not the grandchildren, although the composition of the sentence is a little peculiar. We are faced, therefore, with the question whether the testator meant "she" when he said "she".

It is perhaps an anachronism in this age to hold that the masculine includes all genders, (Code Article 1, Section 7) but that the feminine does not. That, however, is clearly true in the construction of statutes. There is an interesting discussion of the subject in the case in which a woman was denied the right to practice law in this State (*In re Maddox*, 93 Md. 727, 50 A. 487, 55 L. R. A. 298, decided in 1901). There is great difficulty, therefore, in finding (as we must to sustain the appel-

92

lants' contention), that by "she" the testator meant "he or she". We think it much more likely that the feminine pronoun was used because the testator had only grand-daughters and was referring to them. The conclusion necessarily follows that when he was speaking. of grand-children he meant those three granddaughters living and known to him, and, therefore, that the gift was not a class gift at all, but was a gift to indicated persons. That being the case, the entire paragraph will be upheld.

This conclusion is strengthened by the general rule that if there are two possible constructions of a will, and the result under one construction is to create an intestacy, while, under another construction the wishes of the tes-tator will be carried out, the latter construction is always adopted. The reason for this, as given by Mr. Miller in his work "Construction of Wills", Section 316, is that "It is a fair presumption that the testator meant to create a legal rather than an illegal interest, and the construction that will promote the intention should be adopted." See also Gray on Perpetuities, Section 633. As applied to a case where the rule against perpetuities was involved we said "We should not, therefore, assume that he intended to violate a settled rule of law, and thus by the will itself frustrate his own declared intentions." *In re Stickney's Will*, 85 Md. 79, 101, 36 A. 654, 655, 35 L. R. A. 693, 60 Am. St. Rep. 308. In *Hammond v. Piper*, 185 Md. 314, 319, 44 A. 2d 756, 759, we said "As the result of a finding that a class gift was intended would be intestacy, every presumption is against it." In one of the latest cases decided, where there was a question whether the rule against perpetuities had been violated, we held that the devise was to living grand-children rather than to grandchildren as a class, and thereby avoided a partial intestacy. *Reese v. Reese, [Chism v. Reese] supra*. In that case, as in this, there were expressions and the use of words which compelled that conclusion. See also *Hitchens v. Safe Deposit & Trust Co.*, 193 Md. 97, 66 A. 2d 97.

The suggestion is made by appellants that the construction given by the Chancellor was reached by looking backward in the light of the fact that if the will were not upheld, the testator's intentions would be frustrated and his great grandchildren, whom he intended to be his beneficiaries, would have to give way to the various charitable institutions claiming under the will of Andrew. This is the result of the conclusion of the Chancellor, but we do not think that he reached that result because of any emotional appeal in the present situation.  It is suggested that had some other possible situations, which are outlined, existed at the time the decision was made below, it is hardly likely that the same conclusion would have resulted.  That suggestion assumes that the Chancellor ignored the rules we have laid down in the cases already cited, and more recently repeated in the case of *Tilghman v. Fraser*, 191 Md. 132, 59 A. 2d 781, to the effect that a will must not be construed retrospectively in the light of conditions which have arisen afterwards.  We do not think this is a fair criticism of the Chancellor's reasoning, because we have reached the same result, based upon the entire impossibility of any other rational explanation of the use of the feminine pronoun.  We have examined this will from the standpoint of what the testator intended at the time he made it, in the light of the conditions then surrounding him.  We conclude that he intended to leave life estates to the three grandchildren whom he knew, and, therefore, there was no class gift, but a gift to individuals who were described in a way "sufficiently explicit to permit the donee(s) to be identified as the particular individual(s) for whom the gift was intended."  *Evans v. Safe Deposit & Trust Co.*, 190 Md. 332, 340, 58 A. 2d. 649, 653.  So holding, the decree will be affirmed.

*Decree affirmed. Costs to be paid out of the estate.*