686 So.2d 1373 (1997)
Evelyn L. LUDWIG, individually, and as Personal Representative of the Estate of Adrain Robert Ludwig, deceased, Appellant,
v.
AMSOUTH BANK OF FLORIDA, f/k/a The First National Bank of Clearwater, and John Fisher Ludwig, Appellees.
No. 95-04769.
District Court of Appeal of Florida, Second District.
January 8, 1997.
*1374 Merritt A. Gardner and Anthony T. Leon of Gardner, Wilkes, Shaheen & Candelora, Tampa, for Appellant.
Harry S. Cline of Macfarlane Ausley Ferguson & McMullen, Clearwater, for Appellee AmSouth Bank of Florida.
Kent J. Anderson of Anderson, Morgan & Tjaden, P.A., Sarasota, for Appellee John Fisher Ludwig.
Cynthia I. Rice and Theo J. Karaphillis of Richards, Gilkey, Fite, Slaughter, Pratesi & Ward, P.A., Clearwater, Guardian Ad Litem for Kimberly E. Ludwig and Ryan F. Ludwig, minors.
PER CURIAM.
Evelyn L. Ludwig, as personal representative of the Estate of Adrain Robert Ludwig (Robert's Estate), appeals an order providing certain instructions concerning trusts created by Robert's grandparents. The trial court held that the rule against perpetuities did not require the trustee to distribute the corpus of the two trusts at any time prior to Robert's death. The order eliminated any claim that Robert's Estate might have to the trusts and is appealable by Robert's Estate. Fla. R.App. P. 9.110(k). We affirm the trial court's decision that the trusts survived Robert and that his estate had no claim to either trust. We decline to reach any of the trial court's other rulings affecting the remaining parties because additional issues are unresolved in the trial court.
Adrain R. Fisher and Grace M. Fisher were husband and wife. On November 14, 1963, when they were approaching retirement, they executed a trust instrument entitled Fisher Trust No. II. This trust instrument actually created two trusts. Trust A (Mr. Fisher's trust) contained property from Mr. Fisher and provided that the income from this property would be distributed to Fisher Trust No. I during his lifetime. The terms of Fisher Trust No. I are not disclosed in this record, but it appears that this trust was created about 18 months before Trust No. II. Trust B (Mrs. Fisher's trust) contained property from Mrs. Fisher and provided that the income from this property would be distributed to her during her lifetime.
Initially, Article III of Fisher Trust No. II provided that Mr. Fisher's trust, Trust A, would terminate upon his death with the corpus being paid to Fisher Trust No. I after the trustee paid the debts and expenses of his estate. Article III contained a similar provision for Mrs. Fisher's trust. The Fisher Trust No. II reserved the settlors' right, at least jointly, to modify or terminate the trusts.
On May 18, 1970, the couple amended the trust instrument for Fisher Trust No. II. They deleted the simple termination provisions in Article III and added two similar complex provisions with several subsections. Subsection (b) provided that Mr. Fisher's trust, Trust A, would remain in existence after his death and would distribute income and principal for the benefit of the Fishers' two grandsons, Adrain Robert Ludwig (Robert) and John Fisher Ludwig (John).[1] The *1375 amendment further provided that distributions could be made to or for the benefit of each grandson's descendants. The amendment contained no provision expressly terminating the trust on a specific date or event. Instead, it contained a lengthy clause, subsection (d), that is a combination termination/savings clause.[2] This clause explained that, if the trust violates the rule against perpetuities, "on the date limited by such rule" the trustee should distribute the corpus of Trust A: (1) to the two grandsons equally; or, (2) if one of them is deceased, his half is distributed to his descendants per stirpes; or, (3) if one of them is deceased and leaves no descendants, to the other grandson or his descendants; or, (4) if both are deceased and leave no descendants, then to various residual beneficiaries. Mrs. Fisher's trust, Trust B, was similarly amended.
The couple amended the trust instrument again on July 30, 1973. This amendment did not affect the distribution upon their deaths, but specified that the income from Mr. Fisher's trust, Trust A, during his life should be distributed to the two grandsons or "all to the survivor of them."[3]
Mr. Fisher died on December 18, 1976, and Mrs. Fisher died on March 6, 1984. Less *1376 than 21 years after these deaths, Robert died on October 12, 1993, without lineal descendants. John Fisher Ludwig is still living and has two children.[4]
The trustee, AmSouth Bank, concerned about the effect of Robert's death on the proper construction of Trust A, filed a petition for instructions as authorized by section 737.201(1)(c), Florida Statutes (1993). Robert's Estate argued that Trust A should properly have been terminated when Mr. Fisher died in 1976, and Trust B should have been terminated when Mrs. Fisher died in 1984. This interpretation would require the corpus of the two trusts to be distributed equally to John and Robert's Estate because both grandsons were living in 1984. Thus, this interpretation would provide substantial proceeds to Robert's Estate and indirectly to his surviving spouse, Evelyn L. Ludwig. On the other hand, John maintains that the trust is valid and should continue after his death for the period permitted by the rule against perpetuities. This interpretation would leave any corpus for distribution to someone other than either of the grandsons on some future date.[5]
Both Robert's Estate and John moved for judgment on the pleadings or summary judgment. The trial court correctly concluded that the matter was ripe for resolution without an evidentiary hearing. It determined that John is the life in being for purposes of the rule against perpetuities and concluded that both Mr. Fisher's trust, Trust A, and Mrs. Fisher's trust, Trust B, should continue for 20 years and 364 days after John's death. For purposes of this appeal, it is important only that the trial court found that the trusts should continue beyond the date of Robert's death.
On appeal, the parties have provided thorough arguments addressing the possible ambiguity of the distribution/savings Clause. Because of the issue before us at this time, we can take a somewhat narrower approach than that taken by the trial court. There is no question that both trusts were revocable at least until Mr. Fisher's death in 1976. Thus, from the most conservative view, the period for vesting required under the rule of perpetuities did not begin until his death. Cook v. Horn, 214 Ga. 289, 104 S.E.2d 461 (1958); Ryan v. Ward, 192 Md. 342, 64 A.2d 258 (1949); Thomas F. Bergin and Paul G. Haskell, Preface to Estates in Land and Future Interests 212 (1966). See also 70 C.J.S. Perpetuities § 41 (1987) (explaining that rule against perpetuities does not prescribe any limitation on duration of validly created trust as long as interest vests within period prescribed by rule). Article III(1)(b) of the trust clearly provided a vested life interest for the two grandsons following the deaths of their grandparents. Thus, if the savings portion of clause (d) was effective even using Mr. Fisher's death as the starting point for the rule, Robert's Estate was entitled to no interest in these trusts.
The rule against perpetuities is a rule of property law, not a rule of construction. Roemhild v. Jones, 239 F.2d 492 (8th Cir.1957); Estate of Schmitz, 214 Neb. 28, 332 N.W.2d 666 (1983); 61 Am.Jur.2d Perpetuities, etc. § 8 (1981). The savings clause in the trust, however, was an attempt to avoid the rule against perpetuities and can be examined to determine the settlor's intent. Where a trust instrument is unambiguous, the settlor's intention expressed in the trust controls. Knauer v. Barnett, 360 So.2d 399 (Fla.1978); Futrell v. Estate of Vaughn, 586 So.2d 68 (Fla. 2d DCA 1991); Robbins v. Hunyady, 498 So.2d 955 (Fla. 2d DCA), review denied, 500 So.2d 544 (Fla.1986). Extrinsic evidence should be considered only if the language used in the document is ambiguous. *1377 See Souder v. Johnson, 501 So.2d 745 (Fla. 4th DCA 1987).
The trust instrument for Fisher Trust No. II may not be entirely clear concerning all possible future distributions, but it clearly and unambiguously expressed the settlors' intent to continue the trusts for the maximum period permitted by the rule against perpetuities. Thereafter, the trust instrument specified that the corpus was to be distributed to various residual beneficiaries. Without regard to which life-in-being is selected to measure the limitation created by the rule against perpetuities, each trust vested a life estate in the two grandsons, which was still valid when Robert died. See e.g., In re Burrough's Estate, 521 F.2d 277 (D.C.Cir. 1975) (examining all trust provisions together to determine correct disposition, a savings clause may save trust instrument from violating rule against perpetuities). These trusts lasted for a sufficient period and had a sufficient savings clause to exclude the claim of Robert's Estate.
Accordingly, we affirm the trial court's decision to deny the claim of Robert's Estate.
FRANK, A.C.J., BLUE, J., and WHITTEMORE, JAMES D., Associate Judge, concur.
NOTES
[1] Subsection (b) provides:

From the balance remaining, the Trustees shall distribute to or for the benefit of ADRAIN ROBERT LUDWIG and JOHN FISHER LUDWIG, grandsons of ADRAIN R. FISHER, during their lifetimes so much or all of the income and principal of Trust A as the corporate Trustee, in its sole discretion, shall consider necessary or advisable for their medical care, support, education, and general welfare, taking into consideration the standard of living to which such grandsons are accustomed and all other income available to them from all sources known to the corporate Trustee. The Trustees may also distribute to or for the benefit of each grandson's descendants, or to such grandson for their benefit, so much or all of the income and principal of Trust A as in the sole discretion of the corporate Trustee may be necessary or advisable for their support, medical care, education, and general welfare, taking into consideration the standard of living to which such descendants are accustomed and all other income available to them from all sources known to the corporate Trustee. Distributions under this subparagraph (b) need not be equal but shall be made according to the specific needs of each individual beneficiary in order to maintain them all in comfort, good health if possible, and to see that they are educated to the ultimate of their individual capabilities. All income not distributed annually shall be accumulated and added to principal.
[2] The savings clause contained in Trust A provided:

(d) If any trust created hereunder shall violate any applicable rule against perpetuities, accumulations or any similar rule of law, the Trustees are hereby directed to terminate such trust on the date limited by such rule or law and to distribute the property then held in Trust A equally between the said ADRAIN ROBERT LUDWIG and JOHN FISHER LUDWIG if they are alive at that time. If either one is deceased but leaves descendants who are alive at that time, his descendants shall receive, per stirpes, the share which such deceased grandson would have received. If either grandson is deceased and leaves no descendants who are alive at the time of termination, the corporate Trustee shall distribute all the property remaining in Trust A to the surviving grandson or to his living descendants if he is also deceased. If both grandsons are deceased at the time of termination and leave no living descendants, the corporate Trustee is directed to distribute the property in Trust A as follows:
¼ to MAUDE FISHER
¼ to the living descendants of
JOHN WINES BOORAEM
¼ to the living descendants of MARY ETTA BECKER
¼ to the living descendants of WILLIAM DALE FISHER
If Maude Fisher is deceased at the time of the termination of Trust A, her one-fourth share shall be distributed one-third to each of the three remaining groups of living descendants. If there are no living descendants in any of the three aforementioned groups of beneficiaries at the time of the termination of Trust A, their respective share shall be divided equally among the remaining groups of living descendants, provided that each group of living descendants shall collectively receive one share. If there are no living descendants of JOHN WINES BOORAEM, MARY ETTA BECKER, or WM. DALE FISHER at the time of the termination of Trust A, then Trust A shall be distributed to UNITED CEREBRAL PALSY OF PINELLAS COUNTY, presently located at 1117 Arlington Avenue North, St. Petersburg, Florida.
[3] Mrs. Fisher purported to amend the trusts on two more occasions after Mr. Fisher died. The validity of those amendments is an issue still pending among the parties in the trial court. The amendments do not affect this appeal because they would not change the beneficiary status of Robert's Estate.
[4] The lineal descendants, Kimberly E. Ludwig and Ryan F. Ludwig, are represented by a guardian ad litem in this appeal. The arguments advanced by the guardian ad litem are comparable to those made by their father. Accordingly, it is not necessary for us to discuss their arguments separately.
[5] We do not determine whether the future beneficiaries would be John's descendants or someone else's.